IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br><br>J.M.S. (DOB 03/29/2007),<br><br>         A Minor Child.<br><br><br>CHRISTINA MARIE STEELE,<br><br>         Appellant,<br>    v.<br><br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>         Respondent. | No. 68835-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: October 7, 2013 |

LEACH, C.J. — Christina Steele appeals the termination of her parental rights to her son, J.M.S. She claims that the Department of Social and Health Services (Department) failed to offer or provide all court-ordered or otherwise necessary services. She also contends that the trial court abused its discretion and violated her due process rights by shifting to her the burden of proving that her parental deficiencies could be remedied in J.M.S.'s near future. Because the Department offered all the services reasonably available and capable of correcting Steele's parental deficiencies in an express and understandable manner and because the court correctly applied the rebuttable presumption that Steele's parental deficiencies could not be remedied in a timely fashion, we affirm.

FACTS

Christina Steele is the biological mother of J.M.S., who was born in March 2007.[1] On September 16, 2010, when J.M.S. was three years old, the King County Sheriff's Department placed him in protective custody based on allegations of sexual abuse and neglect. The court entered an agreed dependency order on December 15, 2010. The Department placed J.M.S. with relatives but later moved him into foster care. As part of the dispositional order, the court required that Steele participate in drug and alcohol evaluation and treatment, random urinalysis twice weekly, mental health counseling, psychological evaluation with a parenting component, and follow-through with treatment recommendations. The court also ordered her to participate in a sexual deviancy evaluation and treatment if recommended by the evaluator.

For almost the entire first year of the dependency, Steele continued to use methamphetamines and did not participate in the required services or participated only sporadically. The Department sent Steele letters on January 13, June 3, July 11, July 18, August 9, October 17, and November 17, 2011, reminding her of the required services. These letters included referrals to mental health services, drug treatment, urinalysis testing, housing services, job placement services, parent coaching, and domestic violence counseling. They also listed options for low-cost service providers should Steele need financial assistance to seek treatment.

---

[1] A court terminated the biological father's parental rights in a separate proceeding, and he is not a party in the present case.

On August 26, 2011, the Department petitioned to terminate Steele's parental rights. In September 2011, Steele enrolled in a 30-day inpatient drug treatment at Thunderbird Treatment Center. Steele's caseworker, Teresa Sach, learned of this only after Steele graduated from the program. She spoke with Steele in December 2011 about the importance of complying with the court-ordered services. Sach sent two follow-up letters (dated December 27, 2011, and January 3, 2012) detailing what services Steele needed to complete and reminding her of the visitation procedures when her visits began on January 9. Over the course of the dependency, Steele attended approximately 20 out of more than 150 possible visits. While the termination petition was pending, Steele restarted supervised visitation, began regular urinalysis testing, and enrolled in outpatient drug treatment "aftercare." She also attempted to contact housing agencies and scheduled mental health intake interviews.[2]

The termination trial took place in March 2012. After hearing testimony from Steele, Sach, the court-appointed special advocate, several visitation supervisors, mental health and chemical dependency counselors, and a parenting coach, the trial court terminated Steele's parental rights. In its termination order, the trial court made the following contested findings:

> 2.8   Services ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services reasonably available, capable of correcting the parental

---

[2] Steele had a history throughout the dependency of scheduling and missing these mental health interviews. At the time of trial, she had another scheduled appointment to begin therapy, but based on the testimony of Dr. Steve Tutty, a psychologist who evaluated Steele, and Steele's past history of nonparticipation in mental health services, the court found that she was unlikely to attend or to benefit from the services.

deficiencies within the foreseeable future, have been expressly and understandably offered or provided to the mother.

. . . .

2.21 No other services could have been offered or were available that could have remedied the mother's parental deficiencies in the foreseeable future.

. . . .

2.23 The mother was offered services in an express and understandable manner. She was offered services in writing, over the phone, and in person. The mother was provided with the child's Individual Service and Safety Plan and acknowledged receiving it during her testimony. The mother indicated she understood that the ISSP laid out what she needed to do in order to have the child returned to her care.

. . . .

2.27 There is little likelihood that conditions will be remedied so that the child could be returned to the mother's care in the near future.

. . . .

2.31 Regardless of whether sexual abuse occurred, the mother has failed to substantially avail herself of the services and visitation opportunities she agreed to do in order to make the progress necessary and put her in a position to be ready to parent her son.

. . . .

2.40 The mother suffers from substantial mental health issues which impact her ability to meet her own needs, let alone provide care and supervision for [J.M.S.]. The mother has made no efforts to address her mental health needs throughout this dependency.

. . . .

2.46 Ms. Steele was discharged from Sound Mental Health in January 2011 because she had stopped engaging in services and because her funding for further services had ended. If Ms. Steele had been engaged in mental health services with Sound Mental Health, she would have had options to maintain her funding for the service, including sliding fee scales, maintaining her Medicaid, and obtaining assistance from Ms. Bock in renewing her "tier."

. . . .

2.67 The mother will not be able to remedy her significant parental deficiencies in [J.M.S.]'s near future.

2.68 The mother has failed to substantially improve her parental deficiencies in the fifteen months following the entry of the disposition order. Although she has apparently made some progress in the area of drug addiction, at least in the short term, progress in other areas is negligible. Pursuant to RCW 13.34.180(1)(e), the rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be

returned [to] the mother in the near future applies, and the mother has not rebutted the presumption.

The trial court concluded that the Department proved the requirements of RCW 13.34.180 and .190 by clear, cogent, and convincing evidence and that it was in J.M.S's best interests to terminate Steele's parental rights. Steele appeals.

## STANDARD OF REVIEW

The United States Constitution protects parental rights as a fundamental liberty interest.[3] To terminate a parent's rights, the Department must satisfy a two-pronged test.[4] The first prong requires proof of the six factors enumerated in RCW 13.34.180(1).[5] The Department must prove these factors by clear, cogent, and convincing evidence.[6] Clear, cogent, and convincing evidence exists when the evidence shows that an ultimate fact in issue is highly probable.[7] If the Department satisfies the first prong, the court proceeds to the second prong, determining whether

---

[3] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

[4] In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011).

[5] K.N.J., 171 Wn.2d at 576. RCW 13.34.180(1) requires the state to prove (a) the child has been found to be a dependent child; (b) the court has entered a dispositional order pursuant to RCW 13.34.130; (c) the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency; (d) the services rendered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided; (e) there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and (f) continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

[6] K.N.J., 171 Wn.2d at 576-77.

[7] In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995).

termination is in the child's best interests.[8] The Department must prove this second prong by a preponderance of the evidence.[9]

If substantial evidence supports the trial court's findings, we must affirm the termination order.[10] "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise."[11] In this review, we do not make credibility determinations or weigh the evidence.[12] Unchallenged findings of fact are verities on appeal.[13]

## ANALYSIS

First, Steele alleges that the Department failed to satisfy the requirement of RCW 13.34.180(1)(d) that the court-ordered services have been "expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." Specifically, she argues that the Department failed to offer her mental health services that she could afford and that it failed to offer her domestic violence counseling, family counseling, and parental coaching that could have helped her become a better parent to J.M.S.

Second, she challenges the court's determination that there was "little likelihood that conditions will be remedied so that the child can be returned to the parent in the

---

[8] RCW 13.34.190(1)(b).
[9] In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).
[10] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).
[11] In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).
[12] C.B., 134 Wn. App. at 953.
[13] In re Welfare of C.B., 134 Wn. App. 336, 349, 139 P.3d 1119 (2006).

near future."[14] Steele alleges that the court violated her due process rights by placing on her the burden of persuasion to rebut the presumption that her parental deficiencies could not be remedied in the near future. We disagree on both assertions.

Steele argues that the Department bears the ultimate responsibility for procuring appropriate mental health services and for providing funding for court-ordered services, regardless of whether the parent communicates that the services provided are inadequate or unaffordable. RCW 13.34.025(2)(b) states,

> The department shall provide funds for remedial services if the parent is unable to pay <u>to the extent funding is appropriated in the operating budget or otherwise available to the department for such specific services.</u> As a condition for receiving funded remedial services, the court may inquire into the parent's ability to pay for all or part of such services or <u>may require that the parent make appropriate applications for funding to alternative funding sources for such services</u>.

(Emphasis added.) To support her position that the Department failed to provide appropriate low-cost mental health services, Steele cites <u>In re Welfare of S.J.</u>[15] However, that case is inapposite. There, the Department knew the mother suffered from comorbid mental illness and substance abuse issues but adopted a tiered approach to offering services. It refused to provide or offer any mental health services until the mother successfully completed drug treatment. The court determined that the delay in mental health treatment contributed to an avoidable deterioration of the parent-child relationship. Thus, it found that the Department failed to tailor the services to the parent's needs.[16]

---

[14] RCW 13.34.180(1)(e).
[15] 162 Wn. App. 873, 256 P.3d 470 (2011).
[16] <u>S.J.</u>, 162 Wn. App. at 882-83.

This case is different. The Department's service recommendations included all the court-ordered services as well as other services that could have benefitted Steele. These recommendations were carefully tailored to meet Steele's deficiencies and assist her in providing a safe, stable environment for J.M.S. When Steele relocated, her social workers worked diligently to arrange travel to and from appointments and to secure more convenient service providers. Steele does not contest the court's finding that she was referred for mental health counseling and treatment at least 11 times over the course of the dependency. Initially, because she was already receiving mental health services through Sound Mental Health, the Department provided her a referral to continue her therapy there. Also, numerous letters from the different social workers assigned to the case provided Steele with information about other low-cost mental health clinics.

In January 2011, Steele lost the Medicaid benefit that paid for her mental health treatment. After she stopped attending counseling, Sound Mental Health discharged her from its care because she had stopped engaging in services and no longer could pay for the services. Steele did not ask her social worker about financial assistance or discuss her difficulty in getting services. Sach and a mental health counselor from Sound Mental Health testified that they could have helped Steele apply for funding if she had told them about her need for assistance. Steele argues that no one could guarantee that Steele would have qualified for those funds and that because the Department did not offer to pay for the services directly, the Department failed to expressly and understandably offer the required mental health services.

The record shows otherwise. Steele's social workers made referrals to low-cost mental health services and assisted in scheduling and facilitating those visits. Steele never communicated that she no longer had the ability to pay for services. The statute clearly anticipates that the parent must take some responsibility for the treatment process and at least attempt to secure funding. Steele did not do so, even though services and assistance were available. In In re Welfare of R.S.G.,[17] the court determined that the Department's statutory obligation to provide services does not require the Department to fund remedial services without qualification. Substantial evidence supports the trial court's findings that the Department offered the required services but that Steele failed to address adequately her mental health issues.[18]

Steele also argues that the Department had a duty to offer other services that could have helped her become a better parent, including domestic violence counseling, family counseling, and parental coaching. A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child.[19] Steele argues that because the court expressed concerns about her relationship choices and her lack of attachment with J.M.S., the Department was obligated to provide services to address those issues. Steele's drug addiction and untreated mental health issues were the primary parenting deficiencies that the court

---

[17] 174 Wn. App. 410, 427-429, 299 P.3d 26 (2013).

[18] The record does not support the second sentence of finding of fact 2.40. "The mother has made no efforts to address her mental health needs throughout this dependency." She did make some attempts, though not especially fruitful and not maintained. However, while this finding is unsupported, striking it does not change the validity of the court's ultimate termination decision.

[19] In re Welfare of C.S., 168 Wn.2d 51, 56 n.3, 225 P.3d 953 (2010).

identified. The court also expressed concern that Steele did not have a clear housing plan if J.M.S. were returned to her care. The court did not find that the services suggested by Steele were necessary, and the record does not support her suggestion that they would have remedied her parental deficiencies.

The court expressed concern about the history of domestic violence in Steele's relationship with J.M.S.'s father—not to justify terminating her parental rights but to illustrate a more fundamental deficiency in her ability to make decisions about whom she should allow around her son. Similarly, the court was not concerned about the lack of connection between mother and child because Steele did not understand how to address J.M.S.'s special needs but because she consistently missed scheduled visitations and was absent from his life. A family preservation specialist testified that due to the sex abuse allegations, family counseling to help rebuild the bond between mother and child would be inappropriate. Steele challenges none of the court's findings on these issues.

Even if we assume that these suggested services were necessary to reunite Steele with her son, the Department's failure to provide them does not change the outcome in this case. When the Department fails to offer or provide the necessary services, termination is still appropriate if the services would not have remedied the parent's deficiencies in the foreseeable future.[20] The foreseeable future varies with the child's age.[21] For young children, the foreseeable future may mean a matter of

---

[20] See T.R., 108 Wn. App. at 164.
[21] T.R., 108 Wn. App. at 164.

months.[22] "Although 1 year may not be a long time for an adult decision maker, for a young child it may seem like forever."[23] Steele does not challenge the court's finding that J.M.S.'s near future is less than six months.

The court noted that many elements played into Steele's parental deficiencies—a long history of substance abuse and methamphetamine addiction, inability or unwillingness to take responsibility for her role in J.M.S.'s sexual abuse allegations, and untreated mental illness. Dr. Tutty testified that it would take Steele at least a year to demonstrate the stability necessary to consider reunification. Even if the services Steele suggests were necessary, the Department need not offer necessary services if the effort would be futile.[24] Because Steele's deficiencies could not be remedied in less than six months, further services would have been futile.

Further, while Steele asserts that she had at least six months' demonstrated sobriety by the time of the termination hearing, the record does not support her claim. The dispositional order clearly stated that a missed urinalysis test or a diluted result would be interpreted as "dirty." Steele does not challenge the court's findings she could not demonstrate even 30 days of sobriety. Even after graduating from the Thunderbird treatment program and reengaging with the Department, she missed one random test and had one diluted result, both of which would be considered a positive test. Her lack

---

[22] See, e.g., In re Welfare of Hall, 99 Wn.2d 842, 850-51, 664 P.2d 1245 (1983) (finding eight months not in foreseeable future of four-year-old); In re Dependency of P.D., 58 Wn. App. 18, 27, 792 P.2d 159 (1990) (finding six months not in foreseeable future of 15-month-old).
[23] In re A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988).
[24] In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008).

of compliance, combined with Steele's history of failed substance abuse treatment and relapse, supports the court's finding that her ongoing substance abuse problems continued to present a significant barrier to her ability to parent her son. These conclusions provide independent support for the court's decision that her parental deficiencies could not be remedied in J.M.S.'s near future. Domestic violence and family counseling would not have remedied Steele's parental deficiencies in time to reunite her with her son; thus, the Department was not required to offer them.

Steele also contends that the court erred by finding that she was unlikely to remedy her parental deficiencies in the near future. RCW 13.34.180(1)(e) creates a rebuttable presumption:

> A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided.

Although Steele challenges the adequacy of the services offered, she does not contend that the presumption should not apply to this case. Instead, she argues that the court incorrectly shifted both the burden of production and the ultimate burden of persuasion to her. According to In re Welfare of C.B.,[25] even when the presumption applies, "because it implicates a parent's constitutional rights, this presumption shifts only the burden of production to the parent." The State retains the burden of convincing the

---

[25] 134 Wn. App. 942, 955, 143 P.3d 846 (2006).

court that it is highly probable that Steele would not have improved her parental deficiencies in the near future.[26]

Steele's argument fails. Looking solely at the language of finding of fact 2.68, it appears that the court required Steele to prove her defects could be timely remedied. However, this reading conflicts with the rest of the court's findings as well as its oral ruling. Read as a whole, the record clearly demonstrates that despite Steele's contention, the court did not shift the burden of persuasion. Although Steele presented evidence that she had made some improvements after the Department filed the termination petition, the State proved by clear, cogent, and convincing evidence that Steele's parental deficiencies were unlikely to improve sufficiently to reunite the family anytime in J.M.S.'s near future.

The court entered its dispositional order in December 2010. The record shows that Steele's engagement was nearly nonexistent until November 2011. After the Department petitioned for termination of her parental rights, Steele reengaged with her caseworkers and started seeking services, if intermittently. On appeal, she argues that the progress she made in the six months between the termination petition and the trial successfully rebutted the presumption that she would not remedy her parental deficiencies in the near future. She points to several attempts to remedy her parental deficiencies: drug treatment, compliance with urinalysis testing, application for housing programs, scheduling a mental health intake interview, resumed visitation with J.M.S., and compliance with parental coaching suggestions. However, all of these actions

---

[26] C.B., 134 Wn. App. at 955-56.

occurred more than one year after the court declared J.M.S. dependent, and her record with each was less than satisfactory. While the court acknowledged that Steele had made some progress in drug treatment, it also recognized that her progress in the other areas of noted deficiencies was nearly nonexistent.

Further, several witnesses emphasized that Steele's recent sobriety was largely the result of her current pregnancy and expressed serious concern about her commitment to remaining sober after the birth of her child. Steele herself testified that her longest bout of sobriety (11 months) corresponded with her first pregnancy and that she was unable to maintain sobriety for long after J.M.S. was born. Dr. Tutty testified that he would like to see at least one year of serious mental health treatment and sobriety before he could consider Steele a fit parent. Given the testimony of multiple witnesses that it would take at least a year of demonstrated sobriety and mental health counseling before Steele could be fit to parent J.M.S., the court's termination decision was correct.

## CONCLUSION

Because the Department clearly and understandably offered all required services and was not obligated to offer the domestic violence and other counseling services that Steele now argues were "necessary" and because the State proved by clear, cogent,

and convincing evidence that Steele was unlikely to remedy her parental deficiencies in the near future, we affirm the order terminating Steele's parental rights.

Leach, C.J.

WE CONCUR:

Dwyer, J.

Schindler, J.