22 P.3d 828 (2001)
106 Wash.App. 123
In re DEPENDENCY OF A.M.
Teanna Applebee, Appellant,
v.
Department of Social and Health Services, Respondent.
No. 46486-8-I.
Court of Appeals of Washington, Division 1.
May 7, 2001.
*829 Gregory Link, Seattle, for Appellant.
Cheryl A. Bateman, Atty. Generals Office, Everett, for Respondent.
KENNEDY, J.
The Indian Child Welfare Act (ICWA) requires that any person seeking termination of parental rights to an Indian child "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d). Teanna Applebee, a member of the Snoqualmie Tribe, appeals the termination of her parental rights to her daughter A.M., now four years old, contending that the findings required by § 1912(d) must be supported by evidence beyond a reasonable doubt, rather than by clear, cogent and convincing evidence. We conclude that the ICWA does not require a higher degree of proof in support of § 1912(d) than clear, cogent and convincing evidence. We also reject Ms. Applebee's claim that the State failed to prove that it made active efforts to provide remedial services that were unsuccessful, as required by § 1912(d) of the ICWA. Accordingly, we affirm the termination of the parent child relationship in this case.

FACTS
Teanna Applebee gave birth to baby girl A.M. on December 3, 1996. Ms. Applebee *830 used illegal drugs during her pregnancy. A.M. was born prematurely. She spent her first month of life at the Pediatric Infant Care Program (PIC). Child Protective Services (CPS) was involved with Ms. Applebee prior to A.M.'s birth and CPS provided her with the PIC, a Public Health Nurse, and services at Therapeutic Health Services (THS). THS provided methadone treatment and daily counseling to Ms. Applebee, as well as vouchers for the baby's basic needs. The Department of Social and Health Services (DSHS) funded these services.
Approximately four months after A.M. was born, Ms. Applebee entered a detoxification program at Evergreen Manor. She contacted her maternal aunt and uncle, Sue and Randy Lutz, and asked them to get the baby from an unsafe caretaker with whom she had left A.M. Sue and Randy Lutz retrieved A.M., and they have been her caretakers ever since. In December of 1997, when A.M. was a year old, Ms. Applebee disappeared, and was not located again until the fall of 1999.
Ms. Applebee, A.M., and the Lutzes are enrolled members of the Snoqualmie Tribe. Mary Hinzman is the Vice-Chairwoman of the Snoqualmie Tribe. She is also Ms. Applebee's great-grandmother. Before Ms. Applebee disappeared, Ms. Hinzman told her that it was very important that she keep in contact with the baby. Ms. Hinzman testified that Ms. Applebee came to the tribal office about three times, then disappeared, despite the fact that she could have had many opportunities to visit A.M.
A dependency petition was filed on December 2, 1998, alleging neglect and abandonment by the mother. Social worker Pat Alexander attempted to locate Ms. Applebee at that time and was unable to do so. Accordingly, the dependency petition was served by publication. The dependency order was entered by default on May 4, 1999. It required Ms. Applebee to contact the DSHS to establish an appropriate plan, including visitation.
Ms. Alexander remained in contact with the Tribe, with Ms. Applebee's maternal grandmother and grandfather, maternal great grandmother, and great aunt, and she told each of them that if they heard from Ms. Applebee, to tell her to contact the Department. None of these parties could locate Ms. Applebee. Ms. Applebee contacted her parents at times when she was in jail, but made no effort to contact the Snoqualmie Tribe and did not present herself to the social worker. Tribal Vice-Chairwoman Hinzman subsequently testified that the Tribe looked for Ms. Applebee but was unable to locate her. Ms. Hinzman described the Tribe as a close-knit community and stated that if Ms. Applebee had wanted to locate A.M., she could have easily done so. Ms. Applebee knew that the Tribal office was listed in the phone book and that numerous services through the Tribe were available to her at no cost, including drug and alcohol treatment, individual counseling, food, clothing, housing and medical assistance.
On May 27, 1999, the court ordered the Department to send a termination referral to the Attorney General's Office. A Petition for Termination of Parent-Child Relationship was filed on September 22, 1999.
At some point that same month, social worker Jessica Nicholas discovered that Ms. Applebee was being held at the King County Jail. A short while later, Ms. Applebee was transferred to the Washington State Corrections Center for Women at Purdy (Purdy), where she remains incarcerated to the present time. Her earliest release date is December 1, 2001.
Ms. Nicholas met with Ms. Applebee on October 26, 1999, served her with the termination petition, and discussed termination and services issues with her. Ms. Applebee did not inquire as to the welfare of A.M. at that timealthough she made such an inquiry in December 1999.
In November 1999, three months before trial, drug and alcohol treatment became part of Ms. Applebee's programming at Purdy. She also enrolled in a parenting class. Ms. Nicholas encouraged her to continue participating in classes related to drug and alcohol abuse and parenting. She also gave Ms. Applebee her office number and told her she could call at no cost.
On December 1, 1999, Ms. Applebee was able to appear by telephone from prison and *831 participate in a permanency planning hearing. The court approved adoption as the permanent plan and ordered Ms. Applebee to complete a drug and alcohol evaluation, follow treatment recommendations, and complete an approved parenting assessment and parenting class. The Department was ordered to investigate the possibility of having a parenting assessment while Ms. Applebee was incarcerated. Ms. Nicholas found a parenting evaluator who would travel to the prison approximately three weeks before trial, and called him. The evaluator failed to return the call. Ms. Nicholas did not call him back. At or about that same time, in January 2000, Ms. Nicholas had a conference call with Ms. Applebee and her prison counselor during which they discussed Ms. Applebee's services. Ms. Nicholas noted that the drug and alcohol treatment and parenting classes at Purdy were appropriate and encouraged Ms. Applebee to continue with those services, although she made it clear that the State intended to proceed with the termination. Ms. Applebee agreed that the services she was receiving at Purdy were the critical services ordered and she stated that she did not need any additional services from the social worker.
A two-day termination trial occurred on February 16 and 17, 2000. The trial court heard testimony from several witnesses including Ms. Applebee, members of her family, tribal members, social workers and a Guardian ad Litem. Three expert witnesses, including Tribal Vice Chairwoman Hinzman, testified in support of termination.
At the time of the trial, Ms. Applebee had not seen A.M. for over two years, her last visit having been in December 1997. At trial, she agreed that despite the numerous services that were provided to her, she relapsed into drug use and continued to engage in criminal activity. She also admitted that she had no relationship with the child, and had been difficult to find because she moved a lot and struggled with serious drug and alcohol addictions.
Ms. Sjodin, Ms. Applebee's drug and alcohol treatment provider at Purdy, noted that Ms. Applebee began using drugs at age nine, and had fifteen years of extensive abuse of alcohol, cocaine, heroin and marijuana. She was diagnosed as being latestage chemically dependent in the early stages of recovery. Her treatment providers determined that she would need more treatment and outpatient care after her release from prison.
On March 9, 2000, the court concluded that the statutory elements under RCW 13.34.180 and 13.34.190 had been established by clear, cogent and convincing evidence and that the requirements of 25 U.S.C. § 1912(f) had been proved beyond a reasonable doubt. The court terminated Ms. Applebee's parental rights to A.M. This appeal followed.

DISCUSSION
Standard of Review
Under RCW 13.34.180, a court may enter an order terminating the parent-child relationship when it finds that the following six requisite allegations are supported by clear, cogent and convincing evidence: (a) the child has been found to be a dependent child under RCW 13.34.030(4); (b) the court has entered a dispositional order pursuant to RCW 13.34.130; (c) the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(4); (d) the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided; (e) there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future, and (f) continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. RCW 13.34.180; In re Welfare of Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980); In re Welfare of S.V.B., 75 Wash.App. 762, 768, 880 P.2d 80 (1994). The trial court must also find by a preponderance that termination is in the best interests of the child. RCW 13.34.190(1); (2). In re Dependency of A.S., *832 101 Wash.App. 60, 6 P.3d 11, review denied, 11 P.3d 825 (2000).
Additionally, where a child is an Indian child as outlined in the Indian Child Welfare Act (ICWA), the following elements must be met:
(d) Any party seeking to effect a foster care placement of, or termination of parental rights to an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
....
(f) No termination of parental rights may be ordered in such proceeding in the absence of a determination supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 U.S.C. § 1912(d) and (f).
In proceedings to terminate parental rights, we give particular deference to the trial court's advantage derived from having the witnesses before it. Aschauer, 93 Wash.2d at 695, 611 P.2d 1245; In re H.J.P., 114 Wash.2d 522, 532, 789 P.2d 96 (1990). The termination order will be upheld if there is substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing to support the termination findings. In re Sego, 82 Wash.2d 736, 739, 513 P.2d 831 (1973). Whether a termination is in the best interests of a child must be determined based upon the facts of each case. Aschauer, 93 Wash.2d at 695, 611 P.2d 1245.
Standard of Proof Under 25 U.S.C. § 1912(d)
On appeal, Ms. Applebee argues that § 1912(d) should be read to require the State to prove beyond a reasonable doubt that it provided her with remedial services and rehabilitative programs, rather than by clear, cogent and convincing evidence. She posits that because § 1912(f) requires proof beyond a reasonable doubt that the continued custody of the child is likely to result in serious emotional or physical damage to the child, so also must § 1912(d) require proof beyond a reasonable doubt that active efforts to provide remedial services were made and that the services failed to remedy the parental problems. Nothing less, she contends, is consistent with the strong Congressional intent to maintain intact Indian families wherever possible.
Conversely, the State argues that § 1912(d) imposes no higher degree of proof and no additional remedial services beyond those required under Washington's termination statuteso that if the State has proved the elements contained in RCW 13.34.180(d) and (e) by clear, cogent and convincing evidence, it has thereby met the requirements of § 1912(d).
This precise question has not been addressed in Washington, but other States have done so. Some of them have ruled that the elements of § 1912(d) must be proved beyond a reasonable doubt; others have rejected that premise.
Representative of the states that have required proof of active remedial efforts beyond a reasonable doubt is Minnesota, wherein the Court of Appeals said:
Logically, this seems to be compelled: If termination of parental rights of Indian parents to their children can be ordered only upon a factual basis shown beyond a reasonable doubt (§ 1912(f)), and if termination cannot be effected without a showing of active efforts to prevent the breakup of the Indian family and a failure thereof (1912(d)), then the adequacy of efforts and futility of them, as predicates to termination, must likewise be established beyond a reasonable doubt. Therefore, we recognize the reasonable doubt standard as appropriate in determining whether the petitioning party has complied with section 1912(d).
In the Matter of the Welfare of M.S.S., 465 N.W.2d 412, 418 (Minn.App.1991).
Representative of states that have ruled that a lesser degree of proof is permissible *833 under § 1912(d) is Alaska. The Alaska Supreme Court in K.N. v. State of Alaska, 856 P.2d 468 (1993) concluded that the trial court was not required to apply the beyond a reasonable doubt standard in finding that active remedial efforts had proved unsuccessful under 25 U.S.C. § 1912(d), and that the proper burden of proof was the preponderance burden provided in Alaska's Child in Need of Aid Rule (CINA) 18(c)(2).
CINA 18(c)(2) requires the State to show,
by a preponderance of the evidence that the party requesting the termination of parental rights has shown that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the break-up of the Indian family and that these efforts have proved unsuccessful.
856 P.2d at 475. The K.N. court noted that 25 U.S.C. § 1912(d) does not, on its face, conflict with CINA 18(c)(2). Id. at 476. Indeed, the only reference to a standard beyond a reasonable doubt in 25 U.S.C. § 1912 is found within section (f).
The court then found that the legislative history showed that the provision requiring remedial services from the state was added to § 1912(d) because some states had no such requirement and were not providing services:
[Section 1912(d)] provides that a party seeking foster care placement or termination of parental rights involving an Indian child must satisfy the court that active efforts have been made to provide assistance designed to prevent the breakup of Indian families. The committee is advised that most State laws require public or private agencies involved in child placements to resort to remedial measures prior to initiating placement or termination proceedings, but that these services are rarely provided. This subsection imposes a Federal requirement in that regard with respect to Indian children and families.
Id. at 476 (citing H.R.Rep. No. 95-1386, 95th Cong.2d Sess. 22 (1978), U.S.Code Cong. & Admin. News 1978, pp. 7530, 7545); In re Charles, 70 Or.App. 10, 688 P.2d 1354 (1984) (finding that the purpose of § 1912(d) is to require an affirmative showing by the State that active efforts to reunite the family had failed).
Like the Alaskan court, we see no inherent illogic in applying differing degrees of proof for different elements that are required to be proved in termination proceedings. We note from the K.N. opinion that in Alaska, before a court may terminate parental rights in an Indian child, the State must prove by clear and convincing evidence that the parental conduct that caused the child to be adjudicated a child in need of aid is likely to continue unless parental rights are terminated, must prove beyond a reasonable doubt that continued custody of the child is likely to result in serious emotional or physical damage to the child, and must prove by a preponderance that active efforts have been made to provide remedial services that have proved unsuccessful. 856 P.2d at 474-75. Similarly, in Washington, the elements contained in RCW 13.34.180(1)(a)-(f) must be proved by clear, cogent and convincing evidence, RCW 13.34.190 requires proof by a preponderance that termination is in the best interests of the child, and in termination proceedings involving Indian children, ICWA § 1912(f) requires proof beyond a reasonable doubt that continued custody of the child is likely to result in serious emotional or physical damage to the child.
We find the reasoning of the Alaska court more persuasive than that of the Minnesota court. Moreover, to the extent that there may be anything more than a semantic difference in the requirements for remedial services under RCW 13.34.180 and ICWA, Washington's statute places a more strenuous burden on the State than does § 1912(d). Whereas § 1912(d) only requires evidence that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful, RCW 13.34.180 requires:
(d) That the services ... have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable *834 future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided.

(Emphasis ours).
We conclude that the trial court properly applied the clear, cogent and convincing standard to the requirements contained in 25 U.S.C. § 1912(d).
State's Duty to Make Active Efforts to Provide Remedial Services
Ms. Applebee also argues that under either the clear, cogent and convincing standard or the beyond a reasonable doubt standard, the court erred in finding that the State satisfied its duty to make active efforts to provide her with remedial services for her parental deficiencies as required by § 1912(d). In so arguing, Ms. Applebee focuses only on the services provided during her incarceration at Purdy, which had not proved unsuccessful at the time of the termination trial. Ms. Applebee conceded at oral argument for this appeal that the State made active efforts to provide her with remedial services designed to prevent breakup of the Indian family before her disappearance, but argued that these services were "not enough because they were not sufficient to remedy the problem." This reasoning fails. Section 1912(d) clearly recognizes that State efforts may fail. Indeed, such failure must be shown before parental rights to an Indian child may be terminated.
Although Ms. Applebee was apparently doing well in her rehabilitative programs at Purdy, and that is to her credit, the ICWA is not a statute that provides a parent of an Indian child with perpetual chances for rehabilitation. Rather, the State's active efforts to provide remedial services have necessarily failed at the point that, based on expert testimony, the evidence supports a determination beyond a reasonable doubt that continued custody of the Indian child by the parent is likely to result in serious emotional or physical damage to the child. The ICWA does not require the State to continue making active efforts to remedy parental deficiencies at the expense of physical or emotional damage to the child. Here, based on expert testimony, the trial court found beyond a reasonable doubt that continued custody by Ms. Applebee is likely to result in serious emotional or physical damage to A.M. Finding of Fact 1.42. Ms. Applebee has not challenged this finding. Accordingly, it is a verity on appeal. Washington Ass'n of Child Care Agencies v. Thompson, 34 Wash.App. 235, 247, 660 P.2d 1129 (1983).
It is clear from the record that the State made active efforts to provide Ms. Applebee with remedial services and rehabilitative programs designed to prevent the breakup of her familyfrom before A.M.'s birth until Ms. Applebee ceased participating in drug treatment, went back to using drugs and committing crimes, and abandoned her child in total disregard for her parenting obligations. Ms. Applebee's whereabouts were unknown to her family, her tribe and her social workers for nearly two years. She had been gone for over a year when the dependency order was entered, and had been gone for nearly two years when the termination petition was filed. At the time of trial, she was some two years away from her earliest release date, barely started with the remedial and rehabilitative programs provided at Purdy, and would be in need of long term treatment and outpatient care after her release from prison.
Under Washington law, "`a parent's unwillingness or inability to make use of the services provided excuses the State from offering extra services that might have been helpful.'" In re Dependency of P.A.D., 58 Wash.App. 18, 26, 792 P.2d 159 (1990) (quoting *835 In re Ramquist, 52 Wash.App. 854, 861, 765 P.2d 30 (1988)). We hold that this same rule applies to the services that must be actively offered under § 1912(d). We reject the contention that the State cannot meet its burden under § 1912(d) where the parent was voluntarily inaccessible to the State, thereby making it impossible for the State to offer additional remedial and rehabilitative services. Moreover, there can be no clearer evidence that the State's active efforts have proved unsuccessful than a parent's untimely termination of detoxification treatment, resumption of a lifestyle of drug use and crime, and voluntary disappearance in total disregard for parenting obligations for a substantial period of time. By so ruling, we have also rejected the proposition that § 1912(d) entitles such a parent to additional remedial and rehabilitative services once she has been located in prison.
Accordingly, we need not further address Ms. Applebee's contentions that the State's efforts in the few months before the termination trial were not active enough or unsuccessful enough to pass muster under § 1912(d). Time did not stand still for A.M. while Ms. Applebee pursued a lifestyle of drugs and crime. As is true in many termination cases, the mother's efforts on the eve of the termination trial came too late. See, e.g., In re the Interest of Infant Child Skinner, 97 Wash.App. 108, 982 P.2d 670 (1999); In re Dependency of A.G., 93 Wash.App. 268, 968 P.2d 424 (1998); In re Dependency of O.J., 88 Wash.App. 690, 947 P.2d 252 (1997). That the ICWA applies to this termination proceeding does not change the analysis.
Without assigning error, Ms. Applebee complains in her opening brief that the trial judge failed to specifically find that active efforts had been made and that they were unsuccessful. Indeed, the court failed to enter a finding using the specific words contained in § 1912(d). While it would be preferable for the court to make an ultimate finding in the language of § 1912(d) where Indian children are concerned, as well as in the language of the services provisions of our state statute, the evidentiary and ultimate findings utilizing the language of the state statute are sufficient in this case. As we have noted, any difference in the requirements of § 1912(d) and RCW 13.34.180(d) and (e) are largely semantic; if anything, the showing required by our state statute is more stringent than that contained in § 1912(d). Therefore, for this court to remand for an additional finding in the language of ICWA would be to place form over substance.
We affirm the termination of Ms. Applebee's parental rights.
AGID, C.J., and APPELWICK, J., concur.