IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 33307-8-III |
| | ) | (consolidated with |
| S.E. | ) | No. 33308-6-III) |
| | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Parental Rights to | ) | UNPUBLISHED OPINION |
| | ) | |
| A.E. | ) | |

PENNELL, J. — L.P. appeals an order terminating her parental rights to A.E. and

S.E. We affirm.

## BACKGROUND

In 2013, L.P.'s children were placed in dependency proceedings after being found

unattended. According to the dependency petition, L.P.'s unresolved substance abuse and

inability to provide appropriate supervision subjected her children to abuse, neglect, and

substantial harm to their well-being. L.P.'s children were removed from her home and

placed with relatives. Dependency disposition and review orders required L.P. to obtain a

chemical dependency assessment, participate in recommended treatment, and submit to

random urinalysis testing. L.P. was also required to comply with (1) a parenting

assessment and any recommendations, (2) hands-on parent training or parent-child

interactive therapy (PCIT), and (3) individual counseling and any recommendations, with

the counseling being reserved until L.P.'s chemical dependency needs were addressed.

Services were provided to L.P. and her children over the course of approximately 18 months. During that time, L.P. frequently fell out of contact with her social worker and failed to show for numerous service appointments, visitation sessions, and review hearings. Despite the substance abuse concerns recited in the initial dependency petition, L.P. never participated in any substance abuse treatment. During the course of the dependency, L.P. submitted just two urine samples, both of which produced results positive for amphetamine and methamphetamine. L.P. denied current drug use to various service providers. She claimed her refusal to participate in urinalysis testing was due to a fear of false positive test results.

The termination trial was held in January and February 2015. The Department of Social and Health Services (DSHS) presented multiple witnesses, including visit facilitators, service providers, the social worker, the guardian ad litem (GAL), and a representative from the Colville Confederated Tribe of Indians (Colville Tribe). A.E. and S.E. are considered members of the Colville Tribe through their father, D.E.[1] L.P. did not testify, but she called one witness, a legal nurse consultant, who provided her opinion that

---

[1] D.E. relinquished his parental rights prior to the termination trial and is not a party to this appeal.

2

termination was improper based on statistical research.

DSHS's witnesses testified in support of its request for termination. One witness was social worker Buffy Nicholson, the Colville Tribe's coordinator with regard to the Indian Child Welfare Act of 1978, 25 U.S.C. sections 1901-1963, and the Washington State Indian Child Welfare Act, chapter 13.38 RCW (collectively the "ICWA"). Ms. Nicholson was not personally familiar with L.P. or her children. Her testimony was based on a review of discovery and other documentation as well as contact with L.P.'s social worker and the GAL. Consistent with other witnesses, Ms. Nicholson opined that continuation of L.P.'s parental relationship would seriously harm the children. She testified that L.P. had not addressed her mental health or substance abuse issues. She also noted that although there was evidence of L.P.'s affection toward the children, L.P.'s visits with them led to stress, anxiety, agitation, and confusion, causing the children to act out.

An order terminating L.P.'s parental rights was entered in March 2015. The order concluded that L.P.'s problems with substance abuse constituted her primary parental deficiency and a barrier to safely parenting her children. The termination order made all applicable statutory findings, including a finding that Ms. Nicholson was a "Qualified Expert Witness" under the ICWA. Clerk's Papers (CP) at 182. L.P. appeals.

3

## ANALYSIS

*Factual challenges under generally applicable termination standards*

L.P. challenges the sufficiency of the evidence supporting several of the trial court's factual findings necessary for termination. Specifically, L.P. challenges the court's findings that:

- DSHS established a factual nexus between L.P.'s substance abuse and her parental deficiencies;

- DSHS provided necessary services (RCW 13.34.180(1)(d));

- In light of the services provided, there was little likelihood for parent-child reunification in the near future (RCW 13.34.180(1)(e)); and

- Termination of parental rights was in the best interests of L.P.'s children (RCW 13.34.190).

Ample evidence justified the trial court's findings regarding substance abuse. L.P. tested positive for drugs each time she was tested. Her failure to participate in a drug evaluation and treatment along with approximately 50 missed urine tests provided strong evidence of on-going drug use. *See In re Welfare of A.G.*, 155 Wn. App. 578, 591-92, 229 P.3d 935 (2010). L.P.'s social worker and service providers testified that L.P.'s drug use negatively impacted her ability to supervise her children and to correct her parental

4

deficiencies. L.P.'s behavior was indicative of someone who was prioritizing drugs over parenting. The facts presented at trial provided sufficient justification for linking L.P.'s drug use and her current unfitness to parent.

The trial court was justified in finding all necessary services were provided. L.P. complains DSHS improperly withheld services in the form of hands-on parent training. This position fails for two reasons. First, it overlooks the fact that the court orders only listed hands-on parenting as one of two alternative services. The other alternative was PCIT. It was provided, but L.P. failed to follow through. Second, even if hands-on parent training should have been provided, termination would still be appropriate because L.P. has not shown how this service would have remedied her deficiencies in the foreseeable future. *See, e.g.*, *In re Parental Rights to K.M.M.*, 187 Wn. App. 545, 566, 349 P.3d 929 (2015). The trial court's findings highlight this futility:

> While [L.P.] disputes the completeness of the services offered to her by [DSHS], the Court finds [L.P.'s] ability to parent was so negatively impacted by her chemical dependency that she could not and would not correct the parental deficiencies that brought the children into [DSHS's] care without also addressing her substance abuse.

CP at 181 (Finding of Fact 6.12).

The trial court was similarly justified in finding little likelihood of L.P.'s parental deficiencies being remedied in the near future. If adequate services have been offered or

provided and parental deficiencies are not substantially improved within 12 months of dependency, a rebuttable presumption arises that this factor is established. RCW 13.34.180(1)(e). "A parent's unwillingness to avail herself of remedial services within a reasonable period is highly relevant to a trial court's determination as to whether the State has satisfied RCW 13.34.180(1)(e)." *In re Welfare of T.B.*, 150 Wn. App. 599, 608, 209 P.3d 497 (2009). This presumption applies in L.P.'s case.

Over the course of the approximately 18-month-long dependency, L.P. failed to complete any court ordered services. She did not even attempt to address substance abuse. Although no witnesses gave a timeline or estimate for L.P. to remedy her parental deficiencies, a number of L.P.'s service providers identified L.P.'s personal issues and noncompliance in services as barriers to timely reunification. The social worker also opined that L.P. would be unable to provide permanency anytime soon. These facts provided the trial court with a sufficient basis for finding little likelihood that conditions would be remedied so the children could be returned to L.P. in the near future. RCW 13.34.180(1)(e).

Finally, the trial court appropriately found termination to be in the best interests of L.P.'s children. There is no doubt that L.P. loves her children and shares an attachment with them. But this is not the applicable focus. The social worker, GAL, and tribal

6

representative all concluded that based on the impermanence and uncertainty of foster care, and the lack of evidence that things would change in the near future, termination was in the best interests of L.P.'s children. L.P. was provided sufficient opportunity to address her deficiencies and show that she was ready to care for her children. She failed to follow through. Given DSHS's proof of the allegations of parental deficiency made under RCW 13.34.180(1) by clear, cogent, and convincing evidence, the trial court was justified in finding, by a preponderance of the evidence, that termination was in the best interests of A.E. and S.E. RCW 13.34.190(1)(a)(i).

*Challenges under the Indian Child Welfare Act (ICWA)*

In the context of Indian children, federal and state statutes place additional burdens on DSHS prior to termination. 25 U.S.C. § 1912; RCW 13.38.130(1), (3). L.P. makes two challenges under these provisions.

First, L.P. complains that DSHS failed to prove it made "active efforts" at providing rehabilitative services, as required by RCW 13.38.130(1). This claim fails for the reasons set forth above. The trial court's finding regarding necessary services also supports the "active efforts" requirement under the ICWA. *In re Dependency of A.M.*, 106 Wn. App. 123, 137-38, 22 P.3d 828 (2001).

7

L.P. also contends DSHS failed to meet its burden of proving A.E. and S.E. would likely be subject to serious emotional or physical damage if placed in her custody, as required under the ICWA. RCW 13.38.130(3). This argument is largely based on a challenge to the adequacy of DSHS's proffered expert witness, Ms. Nicholson. L.P. does not question Ms. Nicholson's credentials under RCW 13.38.130(4)(b); instead, she challenges the foundation for her opinions, contending Ms. Nicholson was not familiar enough with the case after having very limited involvement throughout.

The trial court did not abuse its discretion in finding Ms. Nicholson qualified as an expert. Ms. Nicholson's opinion was based on facts made known to her prior to the termination trial. She appeared on behalf of the Colville Tribe, of which L.P.'s children are considered members. Ms. Nicholson was not required to conduct any particular type of personal examination prior to providing testimony. *In re Marriage of Katare*, 175 Wn.2d 23, 39, 283 P.3d 546 (2012) ("an expert is not always required to personally perceive the subject of his or her analysis"). The fact that Ms. Nicholson's knowledge of L.P. and her children came from collateral sources instead of direct contact went to weight, not admissibility. *Id.*

Apart from the challenge to Ms. Nicholson's qualifications, L.P. also argues Ms. Nicholson failed to identify the existence of particular conditions likely to result in

8

serious emotional or physical damage to the children as contemplated by RCW 13.38.130(3). We disagree. Ms. Nicholson opined that continuation of L.P.'s parental relationship would seriously harm the children. She testified that L.P. had not addressed her mental health or substance abuse issues. She also noted that although there was evidence of L.P.'s affection toward the children, the visits led to stress, anxiety, agitation, and confusion, causing the children to act out. Ms. Nicholson's qualified expert opinion, together with the other evidence presented to the court, was sufficient to support the trial court's conclusion that the requirements of RCW 13.38.130(3) were proven beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing, the decision of the superior court is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, A.C.J.                              Korsmo, J.

9