IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE PARENTAL RIGHTS TO A.L.O. | ) ) ) ) ) ) ) | No. 35866-6-III (consolidated with No. 35885-2-III) |
| IN THE MATTER OF THE PARENTAL RIGHTS TO A.M.O. | | UNPUBLISHED OPINION |

FEARING, J. — Cindy O'Casey appeals the trial court's termination of her parental rights to her two children. We affirm.

## FACTS

Cindy O'Casey bore two children, Jared and Joyce. The elder child, Joyce, was born January 18, 2007. Jared was born a year later on March 18, 2008. The children's biological father is Strom O'Casey. All names are pseudonyms.

The Department of Social and Health Services (DSHS) removed Joyce and Jared from the care of Cindy and Strom O'Casey in December 2015 and placed the children in shelter care following allegations of methamphetamine use, domestic violence, and homelessness. Before the removal, Joyce and Jared had resided with a paternal aunt for two weeks, and DSHS had concerns about the aunt's care. Immediately before the children's removal, Cindy O'Casey obtained a protection order to prevent Strom from

contacting her or the children. Jared and Joyce were current on medical and dental care when DSHS removed the two from their parents.

After removal of the children in December 2015, DSHS social worker Dawn Schichtel spoke with Cindy O'Casey and recommended urinalysis and a parenting assessment. Throughout December 2015 and January 2016, O'Casey provided five urine samples. Four samples tested clean except for prescription medications. One sample tested positive for opiates inconsistent with prescribed medications. O'Casey failed to provide any urinalyses from the end of January 2016 through May 2016.

Cindy O'Casey completed a parenting assessment with Ashley Suter in January 2016. Suter recommended family therapy, visitation, and individual therapy for O'Casey with a trauma-focused therapist, and a domestic violence victim program to teach O'Casey boundaries to protect herself and her children.

On February 11, 2016, the trial court found the children dependent. The initial disposition order and later review orders required Cindy O'Casey to submit for sixty days of urinalyses and blood testing, undergo a chemical dependency evaluation, undergo a parenting assessment, engage in family therapy, undergo individual counseling, and submit to domestic violence prevention services. Presumably the earlier parenting assessment sufficed for the order. The disposition orders also demanded that O'Casey comply with all evaluator recommendations.

2

Cindy O'Casey attended one individual counseling session with Lacey Hurley in April 2016. Hurley discharged O'Casey from services when O'Casey failed to attend her next scheduled appointment. Between March and April 2016, O'Casey engaged in three sessions of family therapy with the children. On May 11, 2016, therapist Renee Brecht suspended family therapy because of O'Casey's absence from three sessions and a report of O'Casey's use of illicit drugs. Brecht concluded that the brief therapy rendered no progress. During the three appointments that O'Casey missed, Brecht noticed the children were anxious and concerned. The two children refused to end the session and return to their placements in case O'Casey arrived late. According to Brecht, inconsistency exhibited by a parent decreases a child's trust in the parent.

Cindy O'Casey participated in four supervised visits with Jared and Joyce in September and October 2016. O'Casey missed other appointments or appeared late to appointments. The visitation supervisor briefly discharged O'Casey from visitation services because of O'Casey's sporadic attendance. By December 2016, O'Casey had not visited the children since the October 2016 visits.

On December 13, 2016, DSHS filed a petition to terminate Cindy O'Casey's parental rights.

After DSHS spoke with Joyce and Jared about adoption, Joyce developed behavioral problems resulting from posttraumatic stress disorder. She has experienced psychotic symptoms such as auditory, visual, and olfactory hallucinations, blackouts, and

has visits to a place she called "Mars." Report of Proceedings (RP) at 261. Her traumatic stress disorder led to a hospitalization in May 2017.

Jared suffers from anxiety. He experiences cognitive distortion, during which he believes he is a "bad kid" and supposes the trauma he has suffered is his fault. RP at 366.

In February 2017, Cindy O'Casey participated in two family therapy sessions with therapist Mary Anne Sacco. Sacco opined that, in order for O'Casey to benefit from family therapy, O'Casey needed to first address her drug addiction.

Cindy O'Casey visited with the children on seventeen occasions from January through March 2017. O'Casey completed a chemical dependency assessment in May 2017 and was referred to American Behavioral Health Systems for inpatient treatment. O'Casey entered inpatient treatment on May 22, 2017. On May 25, 2017, O'Casey left drug treatment to enter a mental health facility because she had threatened harm to herself. O'Casey never returned to inpatient treatment and did not engage in any other chemical dependency treatment.

In June 2017, Cindy O'Casey met with mental health therapist Amber Thomas for an evaluation. O'Casey did not complete the evaluation. She left the evaluation early and did not return to Thomas' office. Thomas preliminarily diagnosed O'Casey with depression and posttraumatic stress disorder. Thomas likely would have recommended weekly individual therapy for O'Casey. O'Casey attended a domestic violence victim's program in Oak Harbor during the summer months of 2017. In September 2017, she

participated in an intake appointment at the YWCA for domestic violence prevention services.

After May 2016, Cindy O'Casey completed only one urinalysis on August 11, 2017. O'Casey tested negative for all substances. O'Casey missed numerous urine submissions throughout the dependency.

From July 2017 through October 2017, Cindy O'Casey participated in family therapy with Ashley Suter, the therapist with whom O'Casey completed a parenting assessment. In October, Suter discharged O'Casey for Suter's own medical reasons. Family therapist Emily Steele assumed therapy responsibilities. O'Casey and the children participated in four family therapy sessions with Steele until the parental termination trial in November 2017.

Throughout the dependency, the trial court conducted five review hearings. At each hearing, the dependency court found that O'Casey had made no progress toward remedying her parental deficiencies. At the time of trial, Joyce and Jared resided together in a foster home, their fifth foster home and sixth placement.

PROCEDURE

Strom O'Casey stipulated to the termination of his parental rights to Jared and Joyce. A trial occurred in late November and early December 2017 on the petition to terminate Cindy O'Casey's parental rights.

During trial, DSHS social worker Dawn Schichtel testified to her assignment on the case from December 2015 through February 2017. Schichtel averred that, during the time she supervised the dependency of Joyce and Jared, she reviewed allegations of domestic violence between Cindy and Strom O'Casey. On one occasion, Strom sent Cindy, in the middle of the night, to free a friend of his from jail. When Cindy returned, Strom accused Cindy of dallying and attempted to light her on fire by dousing gasoline over the truck, in which she sat, and rolling a propane tank underneath the truck. On another occasion, Strom rammed his car, in which the two children then rode, into a car occupied by Cindy and Strom's brother. Cindy suffered cracked ribs, a punctured lung, a broken nose, and lacerations that required stitches as a result of the ramming.

During trial testimony, Dawn Schichtel acknowledged that Jared and Joyce had bonded with their mother and that Cindy O'Casey loved her children. Jared and Joyce were happy when seeing their mother. Visitation reports noted excellent parenting skills by O'Casey. Jared and Joyce were well-behaved and well-adjusted kids. Nevertheless, Schichtel opined that O'Casey progressed none in correcting her parental deficiencies.

Social worker Dawn Schichtel testified that, in December 2015, Cindy O'Casey reported a romantic relationship between her and Strom's brother. O'Casey also reported using methamphetamine.

DSHS social worker Lisa Emory assumed duties over Jared and Joyce O'Casey's dependency case in February 2017 and continued that role through the termination trial.

6

Emory echoed that Joyce and Jared had bonded with and loved their parents and that the parents returned the love. Nevertheless, Emory criticized Cindy O'Casey for failing to meet the children's physical, educational, and mental needs.

Lisa Emory declared that, although Cindy O'Casey attended some outpatient chemical dependency treatment, she completed no chemical dependency treatment. According to Emory, O'Casey traveled to Oak Harbor during the summer months of 2017 so that she could receive services in a domestic violence shelter. O'Casey requested a urinalysis during the months of June and July so she could prove sobriety, but Emory did not arrange the testing until August.

Lisa Emory testified to her opinion that Cindy O'Casey could not, in the near future, safely parent Jared and Joyce because two years had elapsed, during which O'Casey had not rectified her parental deficiencies. Emory concluded that termination of O'Casey's parental rights served the children's best interests. The two children needed permanency.

Family therapist Renee Brecht testified at trial that she could not help Cindy O'Casey resolve parental deficiencies because of O'Casey's sporadic attendance at therapy. Brecht recommended termination of O'Casey's parental rights so the children could obtain permanency.

Emily Steele, the third family therapist, testified that, on the day before trial, Joyce asked Cindy O'Casey to sign open adoption paperwork. O'Casey declined. According

7

to Steele, O'Casey needed significant time to complete services such that reunification could not occur in the near future.

One of the children's' counselors, Taylor Kennedy, testified that Jared worries about his mother's well-being. Also, according to Kennedy, Jared does not expect his mother to improve and he wishes permanent placement.

During her testimony, Cindy O'Casey confirmed that her longest period of sobriety since 2014 was seventy-seven days beginning in May 2017, when she entered inpatient treatment. O'Casey had future appointments with chemical dependency treatment providers and often attended Narcotics Anonymous meetings. She had a sponsor to help maintain sobriety.

Cindy O'Casey declared, during trial, that she maintained no relationship with her husband, Strom. O'Casey conceded that she lived at Strom's house with Strom's mother, but O'Casey insisted that Strom did not currently reside at the abode. Lisa Emory testified to seeing Strom and Cindy in the same vehicle the day previously. Dawn Schichtel also averred that she saw the two together at Walmart and another establishment before the trial.

Cindy O'Casey requested the trial court give her more time:

> I think if I had three months I could have everything. I already proven [sic] that I have and can get housing, I'm trying to do everything, I keep trying to do everything but I mean I'm not going to give up regardless. So I have all my appointments set. I'm not the best at showing up but I guarantee this time it's going to happen.

8

RP at 408. When asked how she will rectify her parental deficiencies in three months when she could not accomplish this goal in two years, O'Casey replied that she now controlled her addiction.

Cindy O'Casey testified that anxiety had earlier prevented her from attending treatment appointments. O'Casey averred that, since May 2017, a physician had treated her anxiety. The treatment included medication for anxiety and depression. According to O'Casey, she attended more appointments and focused better with the medication. O'Casey, however, admitted that the anxiety "get[s] the better of me still." RP at 410.

At the conclusion of trial, the trial court terminated Cindy O'Casey's parental rights to Jared and Joyce. In an oral ruling, the court stated:

> Here the parental deficiencies concerned and were found by the Court to be chemical dependency, domestic violence. . . . The mother's pattern of exposing her children to domestic violence constitutes another aspect of her parental deficiency.

RP at 459-60. The court remarked:

> Although I think she wants to improve herself, I just don't find that it's been rebutted by the evidence and, therefore, that presumption stands. That presumption was never overcome nor rebutted.

RP at 462. The termination court added:

> . . . [P]arental termination is appropriate; however, there's a twist to this ruling. I did some research because when I look at the issue of would it be in the children's best interest to terminate the parental relationship, entirely sever it, the Court has some concerns. I think everyone, even the CASA testified that in the best interest of the children would probably be a situation of open adoption . . . .

> [T]his Court does find an open adoption would be in the best interests of the children[.] . . . [T]his Court also holds that there's a substantive due-process right to pursue a voluntary relinquishment of parental rights as an alternative.

RP at 464-65.

The trial court afforded Cindy O'Casey thirty days to relinquish her parental rights and enter an open adoption agreement. O'Casey declined.

The trial court subsequently issued a written order terminating O'Casey's parental rights to Joyce and Jared. With the order, the trial court entered findings of fact that read in part:

### V.

> Services court-ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting parental deficiencies within the foreseeable future have been offered or provided including: chemical dependency assessment and treatment, random urinalysis testing, domestic violence prevention services, individual counseling and family therapy. [sic] To correct her parental deficiencies of untreated chemical dependency, untreated mental health issues, continued relationships with domestic violence perpetrators who put the mother's and children's health, safety and welfare in danger, and an unstable lifestyle due to the aforementioned deficiencies.

### VI.

> There is little likelihood that conditions will be remedied so that the child can be returned to the parent(s) in the near future. RCW 13.34.180(1)(e) contains a section indicating that a parents' failure to improve parental deficiencies for a twelve month period creates a rebuttable presumption that there would be little likelihood that the conditions would be remedied to the point where the children could return to the home in the

near future. The mother was unable to correct her parental deficiencies in roughly 660 days, and although the Court believes that Ms. [O'Casey] wants to improve herself, there has been no evidence provided to rebut the presumption in RCW 13.34.180(1)(e). In deciding this factor, the Court looked at Ms. [O'Casey's] visitation, which showed a failure to maintain consistent contact which is attributed to, not to a lack of love for her children, but to drug addiction and an unstable lifestyle. The missed visits showed a destabilizing pattern for the children and a lack of consistency in Ms. [O'Casey's] parenting. The Court also considered Ms. [O'Casey's] failure to complete chemical dependency treatment, having attended inpatient for only a few days, and having only seventy-seven consecutive days of sobriety, throughout the life of the dependency case. Ms. [O'Casey] also failed to engage in mental health counseling or domestic violence prevention, which the Court also considered. By considering all of this information, the Court determined that Ms. [O'Casey's] parental deficiencies have not been remedied in approximately 600 days and remain present to our current date. The Department has offered and provided all services available to correct the mother's parental deficiencies, including family therapy, individual counseling, a list of providers for chemical dependency treatment, and contact information for domestic violence prevention services. The Department also provided the mother with community resources available to provide housing resources.

## VII.

The Court finds Ms. [O'Casey] is currently unfit to parent the children, based on the abovementioned findings and the finding, by clear, cogent and convincing evidence, that Ms.[O'Casey's] parental deficiencies are currently present and there has been no evidence provided that those parental deficiencies have been remedied or will be remedied in the near future. Additionally, Ms. [O'Casey] is currently residing in the home owned by Mr. [Strom O'Casey], whom both Ms. [O'Casey] and the children have named as a perpetrator of domestic violence against Ms. [O'Casey].

VIII.

Continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a permanent and stable home. The current legal status of Ms. [O'Casey] and [Jared and Joyce O'Casey] does diminish the children's prospects for early integration into a stable and permanent home. There is no doubt that the children love Ms. [O'Casey] and that Ms. [O'Casey] loves the children, but the Court concludes that there is no evidence to show that Ms. [O'Casey] can remedy parental deficiencies in any reasonable period of time in the future, and the children are being harmed by the continuation of the dependency and the continuation of the parent-child relationship.

Clerk's Papers at 119-21.

LAW AND ANALYSIS

Domestic Violence Victim Status

Cindy O'Casey assigns error to three predicates on which the trial court terminated her parental rights. First, the termination court erroneously deemed her status as a domestic violence victim to be a parental deficiency. Second, the evidence did not support a finding that she could not remedy her deficiencies in the near future. Third, the evidence did not support a finding that termination of her parental rights furthered Jared and Joyce's best interests. We disagree with all assignments of error.

On review, we afford the trial court's decision great deference and uphold its findings of fact when supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Substantial evidence is evidence sufficient to convince a fair-minded, rational person of the truth of the declared premise. *World Wide*

*Video v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991). In the context of a termination proceeding, the evidence must be substantial enough to allow the court to conclude the allegations are highly probable. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 568, 815 P.2d 277 (1991). The reviewing court may not weigh the evidence or decide witness credibility. *In re Dependency of A.V.D.*, 62 Wn. App. at 568. Unchallenged findings are verities on appeal. *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

Parents possess a fundamental liberty interest in the custody and care of their children. *In re Dependency of K.D.S.*, 176 Wn.2d 644, 652, 294 P.3d 695 (2013). The State may infringe on this right only when the parent endangers the child's physical or emotional welfare. *In re Welfare of C.S.*, 168 Wn.2d 51, 54, 225 P.3d 953 (2010).

In order to terminate a parent-child relationship, the State must satisfy a three-step test. First, the State must prove the following statutory elements:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .; and

13

>        (f) That continuation of the parent child relationship clearly
> diminishes the child's prospects for early integration into a stable and
> permanent home.

RCW 13.34.180(1).  The State must prove these six statutory elements by clear, cogent, and convincing evidence.  *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011).  Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be highly probable.  *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995).

Second, the court must determine, based on a preponderance of the evidence, whether termination of parental rights serves the best interests of the child.  RCW 13.34.190(1)(b).  Third, in addition to the statutory elements articulated under RCW 13.34.180 and .190, the State must show that the parent is currently unfit.  *In re Welfare of A.B.*, 168 Wn.2d 908, 921, 232 P.3d 1104 (2010).  Current parental unfitness is implicitly established when DSHS proves all six statutory elements.  *In re Dependency of K.N.J.*, 171 Wn.2d at 577.

Cindy O'Casey first argues that her status as a domestic violence survivor formed an improper basis for terminating her parental rights.  To support this position, O'Casey relies on *In re Dependency of D.L.B.*, 186 Wn.2d 103, 124, 376 P.3d 1099 (2016).

In *Dependency of D.L.B.*, the trial court concluded that the mother persistently maintained relationships with abusers, despite the risks the abusers posed for herself and her child, D.L.B.  The trial court also found that the mother hid and misrepresented

14

domestic violence incidents. Her lack of candor prevented her from benefiting from domestic violence programs.

On appeal to the Supreme Court, the mother, in *Dependency of D.L.B.*, advanced the argument that being a victim of domestic violence does not qualify as a parental deficiency. The Supreme Court reasoned that the trial court's findings did not equate domestic violence victimization to a parental deficiency. Instead, the trial court mentioned domestic violence concerns because of doubt the mother would protect D.L.B. from violence if she regained custody.

Cindy O'Casey's trial court entered similar findings. Assuming the trial court found that being a victim of domestic violence constituted a parental deficiency, the court linked the violence to endangering the mother's and children's health, safety and welfare and creating an unstable lifestyle. The court noted that O'Casey resided in her husband's residence, and she had failed to complete a domestic violence course. Although O'Casey denied cohabitating with the husband, witnesses saw the two together.

Cindy O'Casey highlights that the State failed to show any physical violence perpetrated by the children's father on the children. Nevertheless, domestic violence directly and indirectly harms children. *Rodriguez v. Zavala*, 188 Wn.2d 586, 598, 398 P.3d 1071 (2017). A child is psychologically harmed or placed in fear by observing violence against a family member. *Rodriguez v. Zavala*, 188 Wn.2d at 596. In *Rodriguez v. Zavala*, the Supreme Court relied on these observations despite no direct evidence of

physical violence directed to a child. In this appeal, no evidence shows that Strom struck his children, but the children witnessed his violence toward Cindy when they rode as passengers in a car that Strom propelled into Cindy's car.

In *Dependency of D.L.B.*, 186 Wn.2d 103 (2016), the Supreme Court noted that domestic violence constituted only part of the reason the trial court determined the mother unfit to parent the child. The same holds true in Cindy O'Casey's appeal. O'Casey's trial court identified numerous parental deficiencies including chemical dependency, mental health problems, and an unstable lifestyle. O'Casey failed to rectify these additional deficiencies.

Rectification of Deficiencies

Cindy O'Casey next argues that she could have remedied her parental deficiencies in the near future given her participation in services before the termination trial, the recent removal of the barrier of anxiety, and the bond between her and her children.

Termination of parental rights requires evidence showing "little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order triggers a rebuttable presumption that the State fulfills this fifth statutory element. RCW 13.34.180(1)(e). When a parent has been unable or unwilling to rehabilitate over a reasonable period of dependency, a court is justified in finding that the parent will not

16

remedy deficiencies within the near future. *In re Welfare of T.B.*, 150 Wn. App. 599, 608-09, 209 P.3d 497 (2009).

What constitutes the "near future" depends on the age of the child and the circumstances of the child's placement. *In re Welfare of C.B.*, 134 Wn. App. 942, 954, 143 P.3d 846 (2006). For a younger child, a shorter period constitutes the near future more than it does for an older child. *In re Welfare of Hall*, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983).

Cindy O'Casey's trial court employed the rebuttable presumption and then found that O'Casey had failed to correct her parental deficiencies during 660 days. O'Casey disputes this finding by noting that she participated in numerous services throughout the dependency. Haphazard participation in services, however, does not correct parental deficiencies.

Cindy O'Casey further argues that anxiety created a barrier to her completion of services and anxiety medications taken since May 2017 lifted the barrier. Notwithstanding, O'Casey admitted that the anxiety disables her even with medication. According to Emily Steele, a family therapist, reunification would take "a lot of time" even if O'Casey engaged in additional services. RP at 276.

One year has been held outside the near future for a six year old. *In re Dependency of T.R.*, 108 Wn. App. 149, 164-65, 29 P.3d 1275 (2001). Because Joyce and Jared were nine and ten years old at the time of the termination trial, Cindy O'Casey

17

argues the foreseeable future would be longer. Nevertheless, the court must consider the entirety of a child's circumstances, not just age, in assessing the foreseeable future. Both children experienced serious stress and cognitive disorders. Treatment providers testified the children grew weary of waiting for their mother to correct her deficiencies and that the children needed permanence. Given these facts and opinions, substantial evidence supported the trial court's conclusion that O'Casey's parental deficiencies could not be remedied within the foreseeable future.

Best Interest of Children

Finally, Cindy O'Casey argues insufficient evidence supports the conclusion that the termination of her parental rights furthered the children's best interests.

Whether a termination serves the best interests of a child depends on the facts of each case. *In re Dependency of A.M.*, 106 Wn. App. 123, 131, 22 P.3d 828 (2001). The State must prove that termination of parental rights is in the best interests of a child by a preponderance of the evidence. *In re Welfare of A.B.*, 168 Wn.2d at 912 (2010). In proceedings to terminate parental rights, we give particular deference to the trial court's advantage derived from having the witnesses before it when addressing this element. *In re Dependency of A.M.*, 106 Wn. App. at 131.

Cindy O'Casey highlights that several witnesses testified she exhibits good parenting skills, and she underscores testimony that the children wanted to maintain

18

contact with O'Casey. In addition, O'Casey emphasizes the court's comments that some continued contact with the children would better the children's interests.

We conclude that sufficient evidence supported the finding that termination of parental rights served the children's best interests. Multiple service providers opined that the children's best interests were served by terminating parental rights so the children could obtain permanency. While the children might have initially feared never seeing their parents again, by the end of the dependency, the children had tired of waiting and requested that Cindy O'Casey relinquish her parental rights. The statement of the trial court, about maintaining some contact between mother and children, related to how to sever rights, not whether the court should sever rights.

## CONCLUSION

We affirm the trial court's termination of Cindy O'Casey's parental rights.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

19