[No. 83516-1.   En Banc.]
Argued January 11, 2011.   Decided May 26, 2011.

*In the Matter of the Dependency of* K.N.J.[†]

MICHAEL JENKINS, *Petitioner*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

---

[†] For purposes of this opinion, the minor child's initials are used in place of her name.

*Jennifer L. Dobson*; and *Dana M. Lind* (of *Nielsen, Broman & Koch PLLC*), for petitioner.

*Robert M. McKenna, Attorney General,* and *Sarah J. Reyes, Section Chief Assistant Attorney General, Michael S. Majors, Senior Counsel,* and *Melissa L. Nelson, Assistant,* for respondent.

¶1 WIGGINS, J. — The legislature has provided that before a trial court terminates a parent-child relationship, the

court must find, among other things, that the child has been found to be a dependent child. In this case, the order finding the child K.N.J. dependent as to her father, petitioner Michael Jenkins, was void because the order was entered by a pro tempore judge without Jenkins' consent. Nonetheless, we hold that K.N.J.'s dependency was amply proved at the termination trial, where Jenkins was present and represented by counsel, and supported by findings of fact made by a constitutionally valid judge. The trial court's findings also support all other proof required by statute before termination of the parent-child relationship. We affirm the Court of Appeals, which affirmed the trial court's termination of Jenkins' parent-child relationship with K.N.J., but on the alternative ground that dependency was proved at the termination trial.

## FACTS AND PROCEDURAL HISTORY

¶2 K.N.J. was born September 19, 2005. Her biological parents are Marquesha Everett and Michael Jenkins. The mother had sole custody of K.N.J. after her birth. K.N.J. suffered extreme abuse at the hands of her mother.[1] After discovery of the abuse, K.N.J. was immediately removed from her mother's care and placed in foster care; K.N.J. has resided there ever since.

¶3 Jenkins was served with a summons and petition for a dependency hearing held on April 19, 2006. Judge pro tempore Kathryn Trumbull presided. K.N.J.'s mother was present and consented to having the matter heard by a pro tempore judge. The mother stipulated the facts necessary to support the child's dependency *as to her*. The dependency petition stated, "The whereabouts, willingness and ability to parent by the biological father is not known. The Department will continue to investigate." Clerk's Papers (CP) at 266. Jenkins did not appear and was not represented by counsel. The State moved to have Trumbull enter a default

---

[1] Everett was imprisoned as a result of this abuse, and her parental rights were terminated on May 8, 2007. She is not a party to this appeal.

dependency order against Jenkins. Trumbull entered a default order despite her pro tempore status and Jenkins' lack of consent.

¶4 Subsequent dependency review hearings were held on January 25, 2007 and July 5, 2007; an elected judge presided over these hearings. Jenkins was not present at these hearings, nor was he represented by counsel. The court issued dependency review orders referencing the original *default* dependency order and continuing the status quo.

¶5 The State filed a termination petition on February 12, 2007. From January through September 2007 Jenkins' location was unknown.[2] Jenkins obtained counsel on September 10, 2007 and was served with the termination petition on September 25, 2007. A permanency planning hearing was held on November 21, 2007 where Jenkins was represented by his lawyer.

¶6 The trial court presiding over the termination proceedings relied solely on the default order as establishing the basis for dependency. Jenkins moved to dismiss the termination case, asserting that the original dependency order was void for lack of consent to a judge pro tempore and that, as a matter of law, the State could not prove all the required elements of RCW 13.34.180(1). The trial court denied Jenkins' motion to dismiss and terminated his parental rights on August 6, 2008.

¶7 Jenkins appealed. The Court of Appeals held the dependency order was void. However, it concluded that any jurisdictional defect was remedied by the dependency review orders, which amounted to an implicit dependency finding. *In re Dependency of K.N.J.*, 151 Wn. App. 306, 312-15, 211 P.3d 483 (2009). We granted review. 167 Wn.2d 1013, 223 P.3d 1157 (2009).

---

[2] The social worker stated she was "unable to serve him with the court orders to inform him of his rights and the court dates as he [wa]s homeless, only has a [post office] Box and [wa]s not employed." CP at 76.

## ANALYSIS

■ ¶8  Jenkins argues the trial court failed to satisfy all of the mandatory elements of RCW 13.34.180(1) before terminating his parental rights, namely dependency as to him was never established. Whether a termination order satisfies statutory requirements is a question of law. We review questions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

### I. Parental Rights in Custody of Children

■ ■  ¶9  "A parent's right to control and to have the custody of his children is a fundamental civil right which may not be interfered with without the complete protection of due process safeguards." *Halsted v. Sallee*, 31 Wn. App. 193, 195, 639 P.2d 877 (1982); *see Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *see also In re Welfare of Luscier*, 84 Wn.2d 135, 524 P.2d 906 (1974). Jenkins, "as a natural parent, has a fundamental liberty interest in his custody and care of" K.N.J. *In re Custody of C.C.M.*, 149 Wn. App. 184, 203, 202 P.3d 971 (2009) (citing *In re Custody of Smith*, 137 Wn.2d 1, 13-14, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)); *accord Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

■ ■  ¶10  Procedures used to terminate the relationship between parent and child must meet the requisites of the due process clause of the Fourteenth Amendment to the United States Constitution. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24-32, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). Although "due process" cannot be precisely defined, the phrase requires "fundamental fairness." *In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 885, 232 P.3d 1091 (2010). Before the State may completely sever the rights of parents to their natural child, due process requires the State support its allegations by at least clear and convincing evidence. *Santosky*, 455 U.S. at 748.

II. Washington's Statutory Scheme for Termination of Parental Rights

¶11 Before the early 1800s, homeless or neglected children were incarcerated in adult prisons because of the absence of any alternatives. Mary Kay Becker,[3] *Washington State's New Juvenile Code: An Introduction*, 14 GONZ. L. REV. 289, 289 (1979). The social reform movement of the 19th century "responded by establishing refuge houses and reform schools" for children without adequate parental custodians. *Id.* Operating under the "doctrine of parens patriae,[4] the courts could and did sever parental ties, and routinely committed children found to be in unsound environments to reform schools . . . – all without legal process and safeguards." *Id.* at 290 (footnote omitted). In 1905 and 1909, the Washington Legislature created a separate juvenile court and added neglected children to the court's jurisdiction. *Id.* In 1913, chapter 13.04 RCW became effective, establishing a wide range of powers, duties, and procedural guidelines and giving courts the authority to intervene in cases where a child was found to be dependent. Becker, *supra*, at 290. It "remained substantially unchanged until the enactment of House bill 371 in 1977." *Id.*

¶12 The policy rationale behind House Bill 371 first emerged in a 1976 House Senate concurrent resolution. Becker, *supra*, at 298. The joint resolution stated that "[m]aintaining the family unit should be the first consideration in all cases of state intervention into childrens' lives." Comm. on Soc. and Health Servs., Substitute H. Concurrent Res. 46, at 1, 44th Leg., 2d Ex. Sess. (Wash. Feb. 6, 1976). It also emphasized "keeping the family unit together." *Id.* at 5.

---

[3] The Honorable Mary Kay Becker was a state representative from 1975 to 1983 and one of the sponsors of House Bill 371 (H.B. 371, 45th Leg., 1st Ex. Sess. (Wash. 1977)).

[4] The parens patriae doctrine originated in English common law. It refers to the prerogative of the Crown to protect those subjects who were unable to protect themselves. The United States adopted this doctrine and expanded it to include the power of the state to intervene to protect the best interests of children whose welfare is jeopardized. *Ex parte Crouse*, 4 Whart. 9 (Pa. 1839).

These policy statements were adopted into House Bill 371, the legislation that established our current termination statute. Becker, *supra*, at 304-05.

¶13 Termination of parental rights in Washington State is a three-step process.[5] First, the State may take a child into shelter care and hold a hearing to determine if the child is dependent within the meaning of RCW 13.34.030(6). If the child is found to be dependent, the court may return the child to the home under specific conditions or place the child in the care of a suitable person.

¶14 Second, the State must hold a review hearing every six months "to review the progress of the parties and determine whether court supervision should continue." RCW 13.34.138(1). The goal during this phase is "to order remedial measures to preserve and mend family ties, and to alleviate the problems which prompted the State's initial intervention." *In re A.W.*, 53 Wn. App. 22, 27, 765 P.2d 307 (1988). If the efforts prove unsuccessful, the State may proceed to the third step: termination of the parent-child relationship.

¶15 In order to terminate the parent-child relationship, the third step requires the State to satisfy two prongs. The first prong focuses on the adequacy of the parents and requires proof of the six elements set out in RCW 13.34.180(1).[6] Each of the six statutory elements must be

---

[5] Our prior cases speak of a two-step process, consisting of determination of parental unfitness followed by determination of the best interests of the child. *E.g.*, *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). But the statutory scheme clearly requires three steps, as discussed in this opinion.

[6] RCW 13.34.180(1) requires the State to prove:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services rendered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

proved by clear, cogent, and convincing evidence before the State may terminate parental rights. *In re Welfare of C.S.*, 168 Wn.2d 51, 55, 225 P.3d 953 (2010); RCW 13.34.180(1). This court has held satisfaction of the six statutory elements of subsection .180(1) is an implicit finding of unfitness, satisfying the due process requirement that a court must find parents currently unfit before terminating the parent-child relationship. *In re Dependency of K.R.*, 128 Wn.2d 129, 141-42, 904 P.2d 1132 (1995).

¶16 If the State satisfies the first prong by proving the six statutory factors, the court proceeds to the second prong, determining if termination is in the best interest of the child. RCW 13.34.190(1)(b). Only if the first prong is satisfied may the court reach the second. *In re Interest of S.G.*, 140 Wn. App. 461, 470, 166 P.3d 802 (2007); *In re Welfare of C.B.*, 134 Wn. App. 942, 952, 143 P.3d 846 (2006).

■■■ ¶17 The paramount goal of child welfare legislation is to reunite the child with his or her legal parents, if reasonably possible. *In re Dependency of J.H.*, 117 Wn.2d 460, 476, 815 P.2d 1380 (1991); *C.C.M.*, 149 Wn. App. 184. This court has long recognized that a court may not concern itself with a child's welfare without first determining the child is dependent. *In re Welfare of Frank*, 41 Wn.2d 294, 297, 248 P.2d 553 (1952). A valid order of dependency requires the State to establish by a preponderance of the evidence that the child is dependent within the meaning of RCW 13.34.030(6). RCW 13.34.110(1). By definition, a "dependent child" is one who has been abandoned, abused, or neglected, or "has *no* parent, guardian, or custodian capable of providing adequate care." *K.N.J.*, 151 Wn. App. at 311; RCW 13.34.030(6).

---

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . ;

. . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

III. Dependency Order Was Void as to Jenkins

¶18 The key issue in this case is whether the State satisfied the statutory factor of proof that "the child has been found to be a dependent child." RCW 13.34-.180(1)(a). The problem is that the order finding K.N.J. dependent as to Jenkins was entered by a pro tempore judge without Jenkins' consent. A case in superior court may be tried by a judge pro tempore only if, among other conditions, the parties or their attorneys of record have consented in writing or in open court to trial before the judge pro tempore. CONST. art. IV, § 7; RCW 2.08.180; *Nat'l Bank of Wash. v. McCrillis*, 15 Wn.2d 345, 356, 130 P.2d 901 (1942); *State v. Belgarde*, 119 Wn.2d 711, 719, 837 P.2d 599 (1992). Consent cannot be waived by defaulting. *McCrillis*, 15 Wn.2d at 358-59. This court has held that if the basis of the judge's appointment is consent of the parties and there has been no consent, the judge "is without jurisdiction to hear the case, and the entire proceedings before him are void." *Id.* at 359.

¶19 Here, Jenkins did not consent to a judge pro tempore and thus the initial dependency order is void. Nevertheless, the trial court found the initial dependency order, entered by a judge pro tempore without Jenkins' consent, established RCW 13.34.180(1)(a) "beyond any doubt." CP at 303 (Findings of Fact ¶¶ 1.12, 1.27). Despite the void dependency order, Jenkins' parental rights were terminated. The Court of Appeals correctly held the initial dependency order was void for lack of jurisdiction.[7] *K.N.J.*, 151 Wn. App. at 308.

---

[7] " 'In its most general sense, the term "jurisdiction," when applied to a court, is the power residing in such court to determine judicially a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case, its determination by the court is an absolute nullity . . . .' " *Davidson v. Ream*, 97 Misc. 89, 161 N.Y.S. 73, 87 (1916) (quoting 1 JOHN NORTON POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 129 (3d ed. 1905)), *aff'd*, 178 A.D. 362, 164 N.Y.S. 1037 (1917).

IV. Dependency Review Hearings Cannot Establish Dependency

¶20 Despite holding that the initial dependency order was void, the appellate court affirmed the termination order on the theory that subsequent dependency review hearings established dependency and cured the underlying void dependency order. *Id.*

¶21 Dependency review hearings are the second step of the process for terminating parental rights. By statute, the court must periodically review the status of all dependent children. RCW 13.34.138. The reviewing court must "review the progress of the parties and determine whether court supervision should continue." RCW 13.34.138(1). In this case, constitutionally qualified superior court judges held dependency review hearings on July 5, 2007 and November 21, 2007. The orders show that after each hearing, the court rejected the option of dismissing the dependency and instead determined that K.N.J. "remains a dependent child pursuant to RCW 13.34.030." CP at 124, 87.

¶22 A finding of dependency and periodic dependency review hearings are required elements the State must satisfy before terminating parental rights. RCW 13.34.180(1)(a), .138. Proof that review hearings were held does not prove dependency. The purpose and procedural protections involved in each order confirm this verity.

¶23 A dependency hearing is a fact-finding inquiry, the purpose of which is to determine whether the State can meet its burden of showing the child is "dependent" as defined by statute. RCW 13.34.110(1); *In re Welfare of Warren*, 40 Wn.2d 342, 343, 243 P.2d 632 (1952). In contrast, a review hearing is *not* a fact-finding examination making a threshold determination of dependency. *Compare* RCW 13.34.138, *with* RCW 13.34.110(1). Written findings of fact and the underlying reasons for establishing dependency are required of a dependency hearing and the rules of evidence apply. RCW 13.34.110(1); ER 1101(c)(3). Because significant rights are at stake in dependency fact-finding hear-

ings, parents are provided with specific protections and guaranteed rights to ensure a fundamentally fair process. RCW 13.34.090(2), .110(1). The State must establish by a preponderance of the evidence the child is dependent; and a parent has a right to appeal that dependency order. RCW 13.34.110(1); *In re Dependency of Brown*, 149 Wn.2d 836, 840-41, 72 P.3d 757 (2003).

¶24 Unlike a dependency hearing, a review hearing is limited in purpose to reviewing the "progress of the parties and determin[ing] whether court supervision should continue." RCW 13.34.138(1). Review orders are not final and thus are not appealable as a matter of right. *In re Chubb*, 112 Wn.2d 719, 724, 773 P.2d 851 (1989); ER 1101(c)(3). In *Chubb* we held that "[t]he juvenile court is *not* required to make the determination of dependency anew at each hearing. Its function is to determine whether court supervision should *continue*. Essentially, if this supervision is to continue, then what the juvenile court has decided is to abide by the status quo: the determination of dependency." *Chubb*, 112 Wn.2d at 724 (first emphasis added); *K.N.J.*, 151 Wn. App. at 314.

¶25 The Court of Appeals held *Chubb* was not binding because the specific issue in that case was whether dependency review orders were appealable. *K.N.J.*, 151 Wn. App. at 315. However, the interlocutory nature of dependency review hearings and this court's analysis in *Chubb* of the applicable dependency statutes are at odds with the Court of Appeals' interpretation. We hold that dependency review hearings cannot establish dependency.

¶26 Here, the dependency review "status quo" is founded on a default order that was based on agreement of the mother to the allegations against her, not Jenkins. *K.N.J.*, 151 Wn. App. at 314. The facts found to establish dependency at the initial dependency hearing were the facts asserted in the dependency petition filed by the social worker and admitted by the *mother*. The dependency petition does not even allege Jenkins is unfit. The dependency finding is based on the petition, which specifically states

that "the whereabouts, willingness and ability to parent by the biological father is not known. The Department will continue to investigate." CP at 266 (Dependency Pet. ¶ 16). No testimony was presented to establish Jenkins' inability to parent his child; no additional fact-finding was initiated. The pro tempore judge merely checked the boxes on the order of dependency form, relying on the allegations in the petition without making any independent findings. Without any facts relating to Jenkins, the dependency review court could not properly continue the dependency "status quo" as to Jenkins.[8]

## V. Necessary Facts of Dependency Were Found at Jenkins' Termination Trial

¶27 The statutory scheme of dependency, review, and termination proceedings incorporates a careful balance between two critical considerations: the constitutionally protected parent-child relationship and the obligation of the State to ensure "the rights of basic nurture, physical and mental health, and safety of the child." RCW 13.34.020. The statute protects the parent-child relationship in several ways: a child must be returned to the parents unless the court enters an order of dependency; if the child is found dependent, the State must make available remedial services to improve parenting ability and to ameliorate impediments to effective parenting. The interests of the child are protected by the availability of dependency proceedings and the ability of the State to move to terminate parental rights if the parents fail to overcome parenting shortcomings.

¶28 The State argues that even if the review proceedings did not provide the required finding of dependency, the termination hearing findings were sufficient to prove dependency. The findings required for termination of

---

[8] "Each parent is entitled to mount a separate defense against that allegation [dependency]; one cannot necessarily speak for the other. To the extent that the judge pro tempore's order purported to find that Jenkins was incapable of caring for KNJ, the order exceeded the scope of any authority conferred by the mother's consent. It was not a valid finding of dependency and cannot satisfy the element of termination set forth in RCW 13.34.180(1)(a)." *K.N.J.*, 151 Wn. App. at 311.

the parent-child relationship implicitly mean the child is dependent, effectively providing a second determination of dependency. This court recently reaffirmed its earlier decision that an appellate court may infer a finding of current parental unfitness (the equivalent of Washington's statutory definition of dependency), even though the trial court has not made the finding explicitly. *In re Welfare of A.B.*, 168 Wn.2d 908, 921, 232 P.3d 1104 (2010). But we also noted that because the facts and circumstances of parental rights cases vary so widely, "the appellate court can imply or infer the omitted finding if—but only if—all the facts and circumstances in the record (including but not limited to any boiler plate findings that parrot RCW 13.34.180) clearly demonstrate that the omitted finding was actually intended, and thus made, by the trial court." *Id.*

¶29 The omitted finding here is a finding of dependency. A child is dependent if the child "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c). We cannot rely on the termination trial court's finding that K.N.J. is dependent because the court simply relied on the void dependency order. But the trial court made findings of fact that establish dependency:

1.39. The father has had sporadic employment. He has had no stable home. He seems to rely on other people to take care of him.

1.40. Even though he has fathered children, Mr. Jenkins doesn't have any of the parenting skills required. He certainly has no hands-on type of parenting skills.

1.41. The father has shown little interest in any of his children, including [K.N.J.].

1.42. The father has not actively engaged in the necessary drug/alcohol treatment; he has aborted treatment and has numerous failed treatment attempts. The father has not ever engaged in a domestic violence assessment, or any other parenting/psychological assessment or evaluation. The father

has shown no interest in addressing his parental deficiencies, and little to no interest in the children.

1.43. The father has failed to substantially improve parental deficiencies within twelve months following entry of the dispositional order. He has been expressly and understandably offered and/or provided all necessary services reasonably capable of correcting his parental deficiencies.

. . . .

1.50. If there was a continuation of the parent-child relationship with the father, there is absolutely no reason to believe that he would take advantage of any of the necessary services.

CP at 305-07 (Trial Court's "Findings of Fact, Conclusions of Law on Termination of the Parent-Child Relationship Regarding Father"). The trial court made each of these findings upon clear, cogent, and convincing evidence. These findings support the conclusion that K.N.J. is dependent, i.e., has no parent capable of adequately caring for her and that returning her to Jenkins' custody would place her in danger of substantial damage to her psychological and/or physical development.[9] These findings and the other findings satisfy the remaining statutory elements of proof required before the parent-child relationship can be terminated: K.N.J. has been removed from the custody of Jenkins for at least six months (indeed, K.N.J. has never been in Jenkins' custody), services necessary for correction of Jenkins' parental deficiencies have been expressly and understandably offered or provided, there is little likelihood that conditions will be remedied so that K.N.J. can be returned to Jenkins in the future, and the continuation of the parent-child relationship clearly diminishes K.N.J.'s

---

[9] This case contrasts sharply with *A.B.*, 168 Wn.2d 908. In that case, the trial court findings were dramatically inconsistent; boiler plate findings in the language of the statute satisfied the elements of the statute, but the specific findings contradicted the statutory findings, making it impossible to infer the trial court found the father currently unfit to parent his daughter. *Id.* at 921-22. Here, by contrast, the findings are consistent, and we infer unfitness. And unlike *A.B.*, where the State argued this court could rely on the fact that the State had presented substantial evidence of unfitness, here there is not only substantial evidence of unfitness, but specific findings of fact support an inference of unfitness.

prospects for early integration into a stable and permanent home.

¶30 Jenkins was present at the termination trial, represented by counsel, and testified as a witness; additionally, his counsel had the opportunity to cross-examine the State's witnesses. The ultimate goal of State intervention is reunification of the family. This case proceeded toward that goal as if there had been a valid dependency order; Jenkins was offered services and dependency review hearings were held. All procedural safeguards were met except for the initial dependency order that was later determined to be void. Inferring a finding of dependency does not violate any of Jenkins' constitutionally protected due process rights; the outcome here would have been the same had an elected judge issued the dependency order. This opinion should not be read as a license for the State to skip statutorily required steps; we reach this result on the specific facts of this case. Although we hold that the finding of dependency at the termination trial may satisfy the requirement of entry of a dependency order, a trial judge must scrutinize the evidence and enter an order of termination only if all factors are proved by clear, cogent, and convincing evidence.

¶31 Having satisfied RCW 13.34.180, we now address the best interest of K.N.J. K.N.J. is nearly six years old and has never been in her father's custody. The trial court found that termination was in her best interest. We see no reason to disrupt the only permanency K.N.J. has ever known. Accordingly, we affirm the termination of Jenkins' parental rights to K.N.J.

## CONCLUSION

¶32 We affirm the Court of Appeals, but on a different ground. We agree with the Court of Appeals that placing a party in default does not constitute the consent necessary to allow a pro tempore judge to issue a valid dependency order. But we depart from the Court of Appeals and hold that

dependency review hearings cannot cure a void dependency order to establish the finding of dependency required for termination of the parent-child relationship. We affirm because findings of fact entered at the termination trial may sufficiently establish dependency, but only if, as here, the facts and circumstances clearly demonstrate the omitted finding was actually intended by the trial court.

CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

MADSEN, C.J., concurs in the result only.

¶33 ALEXANDER, J. (dissenting) — The legislature has determined that "the family unit is a fundamental resource of American life." RCW 13.34.020. Because family relationships are exalted, they should be nurtured. Therefore, this court should not promote or countenance shortcuts in the process of terminating the relationship between parent and child. Unfortunately, this is what the majority does here. Thus, I dissent.

¶34 In order to terminate the parent-child relationship, the State must prove six statutory elements. The first of these elements is that the child *has* been found to be a dependent. The State clearly failed to establish this element as to K.N.J.'s father. That being the case, the trial court should not have gone on to decide if a termination of K.N.J.'s relationship with her father was in K.N.J.'s best interest.

¶35 I reach this conclusion because, as the majority concedes, the order finding K.N.J. to be a dependent child was void insofar as it relates to the child's father. The majority skirts this obvious defect in the State's showing by concluding that the facts supporting a dependency finding were found at the later termination trial. This conclusion is, in my view, quite startling because it ignores the fact that the dependency determination is to precede the filing of the termination petition and the holding of the termination hearing. In that regard, RCW 13.34.180(1)(a) provides, "A

petition seeking termination of a parent and child relationship may be filed in juvenile court . . . and shall allege all of the following . . . (a) That the child *has* been found to be a dependent child." (Emphasis added.)

¶36 The most troubling aspect of the majority's decision, though, is that the opinion invites, if not encourages, petitioning parties, including the State, to bypass what the majority rightly determines is the first step of the termination process, the dependency proceeding, and allows the State to establish the dependency in one hybrid dependency/termination proceeding. While the majority may deem this a more efficient way to handle some termination cases, this procedure runs roughshod over a parent's ability to establish that the family unit should remain intact.

C. JOHNSON, J., concurs with ALEXANDER, J.

¶37 STEPHENS, J. (concurring in dissent) — I concur in Justice Alexander's dissent. RCW 13.34.180(1)(a) unambiguously requires a finding of dependency before the State may bring a petition seeking termination of a parent and child relationship. The proceedings in this case demonstrate that the parties and the lower court were aware of the need for a dependency finding, as they relied entirely on what turned out to be a void dependency order.

¶38 I share the majority's concern for K.N.J., who is nearly six years old and has never been in her father's custody. There is a legitimate desire in cases such as this to find a solution rather than disrupt a child's life based on what some may label a "technicality." But, this is not the first case in which a defect in subject matter jurisdiction has surfaced to thwart the interests of certainty and finality, nor is it likely to be the last. I cannot reconcile the majority's solution with the requirements of the statute, which does not authorize an appellate court to make an after-the-fact dependency determination based on facts

found at the termination trial. I therefore concur in the dissent.

After modification, further reconsideration denied August 2, 2011.