IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of | No. 80209-7-I |
| K.D., | ORDER WITHDRAWING |
| A minor child. | AND SUBSTITUTING OPINION |

On March 30, 2020, the appellant-mother filed a motion requesting that this court remove her name from the case title, remove her child's birthdate from the caption, and change the case caption of the appeal to "In re K.D." On March 31, 2020, the clerk of the court denied the mother's motion and on June 8, 2020, we denied her motion to modify the clerk's ruling. The mother filed a motion for discretionary review of the order denying the motion with the Washington State Supreme Court.

On February 5, 2021, the Supreme Court granted the mother's motion of August 28, 2020 for discretionary review as to the confidentiality issue only and entered an order on July 22, 2021 remanding to this court to remove the name of the parent and to remove the birthdate of the child from the case caption to comply with RAP 3.4. Pursuant to the order of the Supreme Court, the panel has determined that the opinion shall be withdrawn and a substitute opinion filed. Now, therefore, it is hereby

ORDERED that the opinion filed on June 8, 2020, is withdrawn and a substitute opinion shall be filed.

_Smith, J._

_Chun, J._          _Dwyer, J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Dependency of | No. 80209-7-I |
| K.D., | UNPUBLISHED OPINION |
| A minor child. | |

SMITH, J. — Danielle Graves appeals the juvenile court's order terminating her parental rights. She contends that the court violated the separation of powers when it entered an order in the underlying dependency proceeding directing the Department of Children, Youth, and Families to file a petition to terminate the parent-child relationship. The mother also alleges a violation of her due process right to an impartial tribunal because the same judge who entered the order directing the Department to file a petition presided over the termination fact-finding hearing. Finally, she argues that the Department did not meet its statutory burden to terminate her parental rights because it failed to offer or provide her with a psychological evaluation. We affirm. [1]

FACTS

Danielle Graves is the mother of K.D. She struggles with a severe drug addiction and used heroin throughout her pregnancy. K.D. was drug-affected at

_____

[1] The mother also seeks modification of the clerk's March 31, 2020, ruling denying her motion to change the case caption and to use the parent's initials in the decision. The motion is denied.

Citations and pin cites are based on the Westlaw online version of the cited material.

birth and has special needs. For approximately seven months following K.D.'s birth, the Department of Children, Youth, and Families offered voluntary services to both parents that were focused on addressing their substance abuse.[2]

In May 2017, when K.D. was almost two years old, the Department filed a dependency petition based on concerns about continuing drug use and after receiving a report that the mother was involved in a domestic violence incident with K.D.'s maternal grandmother while the grandmother was holding K.D. The mother was actively using heroin and methamphetamine at the time. K.D. was placed in the care of his paternal grandparents. Apart from a six-week period in late 2017 when K.D. resided with his mother at a treatment facility, K.D. has remained in his grandparents' care throughout the dependency.

In August 2017, the court entered an agreed dependency order as to the mother, finding K.D. dependent because he had no parent, guardian, or custodian capable of adequately caring for him under RCW 13.34.030(6)(c). The agreed-upon factual basis for the dependency was the mother's substance abuse. The mother acknowledged that her substance abuse "need[ed] to be addressed by the services" outlined in the dispositional order and that those services were "reasonable and necessary to address her parental deficiencies." The dispositional order required the mother to complete a drug and alcohol evaluation, to participate in random urinalysis testing, to attend sober support groups, and to complete a mental health assessment, a parenting assessment,

---

[2] The father relinquished his parental rights during the 2019 termination trial and is not a party to this appeal.

and an anger management assessment. The order also required her to follow all treatment recommendations of the evaluators and service providers and to "[p]rovide documentation of Psychological evaluation."

Throughout the dependency, the Department focused primarily on the mother's chronic substance abuse as her primary parental deficiency. In May 2017, after the Department filed the dependency petition, it provided the mother with a referral for a substance abuse evaluation. That evaluation led to a recommendation for inpatient treatment.

In August 2017, the mother entered a six-month inpatient treatment program at Isabella House in Spokane. The program is tailored to pregnant and parenting women and offers comprehensive services that include substance abuse treatment, mental health treatment, and parent coaching. Soon after she began the program, the Department arranged for K.D. to be placed with the mother at Isabella House. However, approximately five weeks later, the mother left the treatment program.

The mother took K.D. when she left Isabella House and did not notify the Department as to her whereabouts for several days. When he was returned to the care of his grandparents, K.D. had sores in his mouth, an infection under his fingernails, and experienced night terrors. He was referred for an assessment which led to a recommendation for counseling.

The Department referred the mother for another substance abuse evaluation in January 2018. The mother decided to enter Family Drug Treatment Court (FDTC) in February 2018. In conjunction with that program, she entered

another inpatient long-term drug treatment program at Evergreen Recovery Center the following month. The program at Evergreen offers services for co-occurring disorders and in addition to drug treatment, offers comprehensive mental health treatment. A month into the program, the mother again abandoned treatment and was discharged from FDTC. In its April 2018 order discharging her from FDTC, the juvenile court directed the Department to file a termination petition.

In July 2018, the Department referred the mother for another substance abuse evaluation. Shortly after, the mother entered detox and then entered a third long-term inpatient drug treatment program at Riel House in Yakima. Upon admission, the mother was experiencing withdrawal and the treatment provider diagnosed her with substance use disorders related to opioids, amphetamines, and cocaine. Like the other treatment programs the mother attempted, Riel House offers substance abuse treatment in conjunction with mental health treatment and parenting education. Six weeks into the program, the mother discontinued treatment.

In the meantime, in August 2018, the Department filed a petition to terminate the mother's parental rights. In the eight months leading up to the fact-finding hearing, the mother did not reengage in treatment. She told the assigned social worker in early 2019 that she intended to enter another long-term treatment program but did not do so.

In addition to substance abuse treatment, throughout the dependency the Department offered the mother services related to mental health, anger

4

management, and urinalysis testing, and services to enable her to develop parenting skills. Although the mother was permitted to visit K.D. twice per week, she did not visit consistently. The Department also offered the mother housing assistance. The mother described her living environment with her mother as "toxic" and told the assigned social worker that she would not be able to stop using drugs while living there. Nevertheless, the mother did not follow up on the Department's offer to provide housing resources.

The hearing took place over two days in May 2019. The mother did not appear at trial. According to the mother's attorney, she entered a detox program on the eve of trial. K.D. was almost four years old at the time of the hearing and had been out of his mother's care for nearly two years. After considering the testimony of 10 witnesses and more than 30 exhibits, the court entered over 100 findings of fact and conclusions of law and an order terminating the mother's parental relationship to K.D. The mother appeals.

### Standard of Review

"Parents have a fundamental liberty interest in the care and welfare of their minor children." In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). To terminate the parent-child relationship, the State must satisfy two statutory prongs. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). First, the State must establish the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i). Evidence is clear, cogent, and convincing if it established the ultimate fact in issue as "'highly probable.'" In re Dependency of K.R., 128

Wn.2d 129, 141, 904 P.2d 1132 (1995) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). Second, the State must show by a preponderance of the evidence that termination serves the best interests of the child. RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). "Whether a termination is in the best interests of a child must be determined based upon the facts of each case." In re Dependency of A.M., 106 Wn. App. 123, 131, 22 P.3d 828 (2001). We place very strong reliance on a trial court's determination of what serves the child's best interests. In re Welfare of L.N.B.-L., 157 Wn. App. 215, 255, 237 P.3d 944 (2010).

Where the trial court has weighed the evidence, our review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009) (citing World Wide Video, Inc. v. City of Tukwila, 117 Wn.2d 382, 387, 816 P.2d 18 (1991)). The determination of whether the findings of fact are supported by substantial evidence "must be made in light of the degree of proof required." P.D., 58 Wn. App. at 25. In determining whether substantial evidence supports the trial court's findings, "this court does not weigh the evidence or the credibility of witnesses." In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

Separation of Powers

The mother contends that the juvenile court invaded the prerogative of the executive branch—here the Department—and thereby violated the separation of powers when the court ordered the Department to file a petition to terminate her parental rights.  The issue of a trial court's legal authority is a question of law we review de novo. O'Neill v. City of Shoreline, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014).

The Department raises as a threshold matter whether the challenged April 2018 order entered in the dependency is reviewable in the mother's appeal of the order terminating her parental rights.

A termination proceeding is a new proceeding, rather than an extension of the prior dependency action, because the "purpose of a dependency proceeding and a termination proceeding are diametric."  In re Welfare of S.I., 184 Wn. App. 531, 540, 337 P.3d 1114 (2014).  The mother did not appeal from the 2018 order, or from any other order entered in the prior dependency matter.[3]  In her appeal, the mother thus attempts to collaterally challenge an order in an action that was not the action in which the order was rendered.  As such, her collateral challenge can be maintained only on the basis of fraud that goes to the court's jurisdiction. Mueller v. Miller, 82 Wn. App. 236, 250-51, 917 P.2d 604 (1996);   Batey v.

---

[3] Because RAP 2.2 explicitly allows an appeal as of right only of an order following a finding of dependency, it appears that the court's order discharging the mother from FDTC would be reviewable only under the discretionary review standards of RAP 2.3.

7

Batey, 35 Wn.2d 791, 798, 215 P.2d 694 (1950); Anderson v. Anderson, 52 Wn.2d 757, 328 P.2d 888 (1958).

The mother insists that the order entered in the underlying dependency proceeding is properly before this court because the dependency and termination matters are intertwined. And she argues that her appeal of the termination order brings up for review the 2018 dependency order because the termination action was premised on that order. We agree with the Department. Because the dependency proceeding is legally distinct from the termination proceeding, the April 2018 order entered in the dependency matter is not reviewable in the mother's appeal of the termination order.

But even if we assume that the 2018 order is properly before us, the juvenile court's 2018 order did not violate the separation of powers.

A fundamental principle of our constitutional system is that "the governmental powers are divided among three branches—the legislative, the executive, and the judicial—and that each is separate from the other." State v. Osloond, 60 Wn. App. 584, 587, 805 P.2d 263 (1991). Washington's constitution, much like the federal constitution, does not contain a formal separation of powers clause. Osloond, 60 Wn. App. at 587. "Nonetheless, the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine." See Carrick v. Locke, 125 Wn.2d 129, 134-35, 882 P.2d 173 (1994). In re the Salary of Juvenile Dir., 87 Wn.2d 232, 238-40, 552 P.2d 163 (1976).

The purpose of the doctrine is "to ensure that the fundamental functions of each branch remain inviolate." Carrick, 125 Wn.2d at 135.

The validity of the separation of powers does not, however, "depend on the branches of government being hermetically sealed off from one another." Carrick, 125 Wn.2d at 135. The separation of powers doctrine evolved side by side with our constitutional scheme of checks and balances. In re Interest of Mowery, 141 Wn. App. 263, 281, 169 P.3d 835 (2007). Harmonizing these doctrines requires that "[t]he different branches must remain partially intertwined if for no other reason than to maintain an effective system of checks and balances, as well as an effective government." Carrick, 125 Wn.2d at 135.

Separation of powers is thus grounded in flexibility and practicality and "rarely will offer a definitive boundary beyond which one branch may not tread." Carrick, 125 Wn.2d at 135 (citing Juvenile Dir., 87 Wn.2d at 240). To determine whether the separation of powers has been violated, the inquiry is not "'whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.'" Carrick, 125 Wn.2d at 135 (quoting Zylstra v. Piva, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). Our inquiry seeks to balance the value of autonomy against the competing value of reciprocity. Wash. State Bar Ass'n, 125 Wn.2d 901, 913, 890 P.2d 1047 (1995).

To evaluate whether one branch of government is damaged by an alleged incursion by another, courts may look to the history of the practice and indication of toleration for coinciding activities. Carrick, 125 Wn.2d at 136. As

the doctrine protects institutional interests, a "history of cooperation" between the branches "militates against a finding of a separation of powers violation." State v. Chavez, 134 Wn. App. 657, 666, 142 P.3d 1110 (2006), aff'd, 163 Wn.2d 262, 180 P.3d 1250 (2008). These principles guide our analysis of the mother's claim that by ordering the Department to file a termination petition, the court unconstitutionally invaded the prerogative and independence of the Department.

The court and the Department do not operate within mutually exclusive spheres. In cases involving child welfare, there is a history of interdependence and cooperation between the juvenile courts and the Department. Dependency proceedings under the termination statute are remedial in nature and are intended to protect children and, where possible, to reunite families. Schermer, 161 Wn.2d at 943; In re Dependency of A.L.F., 192 Wn. App. 512, 523, 371 P.3d 537 (2016). The Department has authority to provide services to parents in order to meet the legislative objectives and to alleviate the problems that led to state intervention. RCW 13.34.025; RCW 74.13.010, .031; A.L.F., 192 Wn. App. at 523. But the Department does not bear sole responsibility and authority to intervene in the lives of families. In 1905, the legislature created separate juvenile courts and added neglected children to the court's jurisdiction. K.N.J., 171 Wn.2d at 575. Eight years later, chapter 13.04 RCW, the predecessor to the current termination statute, was enacted, establishing a "wide range of powers, duties, and procedural guidelines and giving courts the authority to intervene" when a child is found to be dependent. K.N.J., 171 Wn.2d at 575.

Under chapter 13.34 RCW, the Department is responsible for case management, but the juvenile court oversees dependency proceedings. The court exercises its oversight role primarily through dependency review hearings. K.N.J., 171 Wn.2d at 579. RCW 13.34.138(1) requires that the court review the status of a dependent child at least every six months. The purpose of review hearings is to evaluate the progress of the parent and determine whether it is appropriate to continue court supervision. K.N.J. 171 Wn.2d at 579; In re Dependency of A.W. 53 Wn. App. 22, 28, 765 P.2d 307 (1988). If a child is not returned to a parent at a review hearing, the court must determine whether the current long-term plan remains in the best interest of the child and whether additional orders are required to move toward permanency. RCW 13.34.138(2)(c)(xii), (xiii). With respect to this determination, the legislature has expressly provided that at the review hearing, the juvenile court may order the filing of a petition to terminate the parent-child relationship. RCW 13.34.138(2)(d).

The dependency statute also allows the juvenile court to place a child with a caregiver over the Department's objections. RCW 13.34.130(1)(b)(i). And at the time of the entry of the dispositional order, the court may order the filing of a termination petition when there are aggravating circumstances, such that reasonable efforts to reunify the family are not required. RCW 13.34.130(8), .132(4).

In addition, when a child has been returned to a parent's custody and then subsequently removed, the court is required to conduct a review hearing to

11

determine whether the permanent plan for the child needs to be changed, whether a termination petition should be filed, or whether other action is warranted. RCW 13.34.138(3)(c). The best interest of the child is the primary consideration in the review hearing process. RCW 13.34.138(3)(c). The permanency planning provisions also provide that the court "shall" order the Department to file a termination petition if the child has been out of the home for 15 months of the most recent 22-month period and the court has not made a "good cause" exception. RCW 13.34.136(3).

The mother's argument is inconsistent with the provisions of Title 13 RCW. While the Department may file a termination petition without impetus from the court, these provisions clearly allow, and sometimes require, the juvenile court to order the Department to file a termination petition.

The mother suggests that all provisions authorizing the juvenile court to order the Department to file a termination petition are unconstitutional. But she relies on cases involving the encroachment upon the discretionary charging decisions of criminal prosecutors. See State v. Rice, 174 Wn.2d 884, 896, 279 P.3d 849 (2012); State v. Agustin, 1 Wn. App. 2d 911, 921-22, 407 P.3d 1155 (2018). She advances no compelling argument that the Department's authority to initiate an action to terminate parental rights is "analogous to a charging document instituting a criminal action" and that these authorities apply outside of the context of criminal prosecutions. The mother fails to establish beyond a reasonable doubt the unconstitutionality of any of the provisions of chapter 13.34 RCW. See In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015)

(Statutes are presumed to be constitutional, and the burden falls to the "challenger of a statute [to] prove beyond a reasonable doubt that the statute is unconstitutional.").

The juvenile court's actions in this case were consistent with the authority vested by the legislature. The court found K.D. dependent as to the mother in August 2017 and held a review hearing in October 2017. At the review hearing, the court made findings with regard to the mother's compliance with the court's orders and her progress, and approved the plan to reunite K.D. with her. Shortly thereafter, the court ordered K.D. to be placed with his mother at an inpatient treatment facility, but then ordered K.D.'s removal again after the mother abandoned treatment.

The court held another review hearing in January 2018 and, in accordance with RCW 13.34.138(3)(c), changed the permanent plan for K.D. to a concurrent plan of returning K.D. home or pursuing adoption. In April 2018, after the mother entered FDTC and was then discharged from that program after quickly abandoning another long-term treatment program, the court directed the Department to file a termination petition. Four months later, the Department filed the petition. At a review hearing in May 2018, the court changed the permanent plan to a primary plan of adoption and alternate plan of returning home.

The decision of whether and when to file an action to terminate the parent-child relationship under chapter 13.34 RCW is not the exclusive prerogative of the Department. The juvenile court's April 2018 order directing the filing of a

termination petition is consistent with its authority under Title 13 RCW and did not unconstitutionally encroach upon the authority of the Department.

Impartial Tribunal

The mother next claims she was deprived of her right to an impartial tribunal because the same judge who ordered the Department to file a termination petition in the dependency case presided over the termination fact-finding hearing.

Due process requires "an impartial and disinterested tribunal in both civil and criminal cases." Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). Nevertheless, most issues of alleged bias requiring judicial disqualification do not rise to a constitutional level. Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (citing Fed. Trade Comm'n v. Cement Inst., 333 U.S. 683, 702, 68 S. Ct. 793, 92 L. Ed. 1010 (1948)). Because the states' codes of judicial conduct may provide more protection than due process requires, courts generally resolve most disputes over disqualification without resort to the constitution; only rarely will due process mandate disqualification. Caperton, 556 U.S. at 889-90. When examining whether due process mandates disqualification, a court conducts an objective inquiry, asking not "whether the judge is actually, subjectively biased, but whether the average judge in [their] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Caperton, 556 U.S. at 881.

The United States Supreme Court has found an unconstitutional potential for bias in violation of the due process clause only in specific, limited circumstances. For instance, such circumstances may exist where a judge has "a direct, personal, substantial pecuniary interest" in a case, Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927), where a judge overseeing a criminal contempt proceeding had "previously served as grand juror in the same case, or where the party charged with contempt ha[d] conducted 'an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.'" Williams v. Pennsylvania, 136 S. Ct. 1899, 1912, 195 L. Ed. 2d 132 (2016) (Roberts, C.J., dissenting on other grounds) (quoting Mayberry v. Pennsylvania, 400 U.S. 455, 465-66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)). Unconstitutional potential for bias may also exist where an individual with a stake in a case had a significant and disproportionate role in placing a judge on the case through the campaign process or where a judge had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case. Caperton, 556 U.S. at 884; Williams, 136 S. Ct. at 1906.

The circumstances here do not compare to these "extreme" and "extraordinary" scenarios that led the United States Supreme Court to conclude that recusal was required. See Caperton, 556 U.S. at 887-88. The judge in this case acted only in the capacity as a judicial officer. In that capacity, she entered an order involving the mother in FDTC proceedings. Over a year later, when she presided over the fact-finding hearing on the Department's termination petition, the judge promptly alerted the parties to her prior involvement. At the outset of

15

the termination fact-finding hearing, the judge informed the parties that she had presided over FDTC during the time when the mother participated, that the mother's name was familiar, and that she remembered no details about the mother's case. Neither party raised any objection or sought recusal after being apprised of these circumstances.[4]

Our decision in In re Dependency of A.E.T.H., 9 Wn. App. 2d 502, 446 P.3d 667 (2019), does not advance the mother's claim on appeal. The juvenile court's impartiality was compromised in that case by the misconduct of employees of the guardian ad litem program who were "working against" the parents. A.E.T.H., 9 Wn. App. 2d at 517-18. This case involves no allegations of misconduct. And the court's order discharging the mother from the FDTC program and directing the Department to file a petition was not "working against" the mother. The court was simply balancing its responsibilities under the statute to facilitate the provision of resources and assistance to the parents to enable reunification while, at the same time, protecting the welfare of the child and moving the case toward permanency. While the court directed the Department to file a termination petition, efforts to provide the mother with substantial services, including long-term inpatient substance abuse treatment, continued and the court approved K.D.'s return home as an alternative long-term plan for him. The

---

[4] The mother clarifies in her reply brief that the issue is not simply whether the prior involvement of the judge created an unconstitutional risk of bias, but that unconstitutional bias arose from the fact that "*the Superior Court* (as a governing body)" adjudicated the matter after having issued an order directing the Department to initiate the termination proceeding. But none of the cases she relies on support her argument that the alleged "structural" flaw she describes results in a violation of the due process right to an impartial tribunal.

court's order does not demonstrate or give rise to an inference of unconstitutional bias. The mother fails to establish a violation of her due process right to an impartial tribunal.

Services

Finally, the mother claims the evidence does not support the court's determination that the Department met its burden under RCW 13.34.180(1)(d) because the Department failed to offer her a psychological evaluation.

Parents must be offered all reasonably available and necessary services capable of correcting parental deficiencies within the near future. RCW 13.34.180(1)(d). Such services must be individually tailored to the needs of the parent. In re Dependency of D.L.B., 188 Wn. App. 905, 920, 355 P.3d 345 (2015), aff'd, 186 Wn.2d 103, 376 P.3d 1099 (2016). But the Department need not provide additional services where the record establishes that such provision would be futile. In re Parental Rights to K.M.M., 186 Wn.2d 466, 480, 379 P.3d 75 (2016). Where a parent is unwilling or unable to make use of the services already provided, offering additional services would be futile. K.M.M., 186 Wn.2d at 483.

The mother claims that a psychological evaluation was a court-ordered service the Department was required to provide. We disagree. No court order, directly or impliedly, required the mother to obtain a psychological evaluation. Based on her representation to Department employees that she completed a psychological evaluation in 2017, the dispositional order and subsequent review hearing orders directed the mother to "provide documentation" of the evaluation

to the Department. Although the mother never provided documentation to the Department, she did not change her position that she had, in fact, already completed an evaluation and had obtained the results.

Even when a service is not court-ordered, it may still be considered a necessary service that the Department should have brought to the attention of the trial court prior to termination. RCW 13.34.180(1)(d); In re Dependency of T.L.G., 126 Wn. App. 181, 200, 108 P.3d 156 (2005). The mother contends that even if a psychological evaluation was not court-ordered, it was a necessary service because a psychological evaluation is more extensive than a mental health assessment, which the Department was ordered to provide. The mother asserts that such an evaluation could have shed light on her inability to successfully complete drug treatment and could have offered appropriate treatment options to "overcome her pattern" of quickly withdrawing from treatment.

But a necessary service is a service that is "'needed to address a condition that precludes reunification of the parent and child.'" K.M.M., 186 Wn.2d at 480 (quoting In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014)). A psychological evaluation does not fall within this definition because an evaluation would not have enabled reunification. The purpose would have been to direct the mother toward appropriate treatment. The mental health treatment that followed from the evaluation, not the evaluation itself, was the service necessary to address a condition precluding reunification. Here, the mother does not identify a mental health or other supportive service that would

have been helpful that the Department failed to offer. The mother offers nothing beyond speculation to support the claim that another psychological evaluation would have led to different treatment recommendations. It is undisputed that the Department offered mental health services to the mother, both in conjunction with long-term inpatient drug treatment and independently, and that for the most part, she failed to engage in those services. And the mother does not challenge the court's finding that during the dependency, she firmly expressed her view that she "needed to focus on her drug addiction and get sober" before she would be able to address any underlying mental health issues.

There is no evidence in the record to suggest that a psychological evaluation, or any other available service, was capable of correcting the mother's parental deficiencies within the child's foreseeable future. The foreseeable future for K.D. was six months. Substantial evidence supports the trial court's determination that the Department expressly and understandably offered all reasonably available and necessary services as required by RCW 13.34.180(1)(d).

We affirm.

WE CONCUR: