
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| In the Matter of the Parental Rights to | ) | |
| | ) | No. 38020-3-III |
| K.A. | ) | (Consolidated with |
| E.A. | ) | Nos. 38095-5-III, 38021-1-III, |
| A.C. | ) | 38096-3-III, 38023-8-III, |
| I.C. | ) | 38093-9-III, 38024-6-III, and |
| | ) | 38094-7-III) |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |

STAAB, J. — The Department of Children, Youth, and Families (Department) initiated dependency proceedings for the Mother's four youngest children when K.A. was born with methamphetamine in her system. The four children have two fathers, whom we refer to as Father A and Father C. The Department determined that the Mother was a severe addict with co-occurring mental health conditions suffering from domestic violence. Father A was homeless. Father C suffered from substance abuse and other mental health conditions that required additional diagnoses. After 38 months of foster care and various services, the trial court terminated all parental relationships. The Mother appealed, claiming that the Department failed to provide necessary family therapy. Father A appealed on the same basis. Father C appealed, claiming that the

No. 38020-3-III (Consolidated with Nos. 38095-5-III,
38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III,
38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*

Department failed to tailor services to his mental health conditions. The State concedes that it failed to provide all services necessary to reunify all three parents with the children. We agree and accept the State's concession.

The Department must expressly and understandably offer all necessary and court-ordered services to parents before terminating their parental rights. When the Department has reason to believe that a parent may have an intellectual disability, it must make reasonable efforts to ascertain the extent of that disability and tailor services according to professional guidelines to ensure that the offered services are reasonably understood. The trial court must determine whether reasonable efforts were taken to fulfill this duty from the perspective of an objective observer who is aware of the nature and extent of a parent's disability, as well as professional guidelines for communicating with a person with the identified disability.

Here, the Department failed to make referrals to the Mother and Father A for family therapy. The Department did not adequately ascertain the level of Father C's disability, precluding the required tailoring of services to his cognitive level. Therefore, we hold that the Department did not carry its burden of proving by clear, cogent, and convincing evidence that it expressly and understandably offered or provided all necessary and court-ordered services to these parents. For these reasons, we reverse the order terminating the parental rights of the Mother, Father A, and Father C.

2

No. 38020-3-III (Consolidated with Nos. 38095-5-III,
38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III,
38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*


BACKGROUND

The Mother has seven children with the youngest four children being the focus of this matter. A.C. (age 9) and I.C. (age 10) are fathered by Father C. K.A. (age 4) and E.A. (age 5) are fathered by Father A. In late 2017, when K.A. was born with methamphetamine in her system, the parents voluntarily entered dependency proceedings for all four children.[1] All four children were removed from the Mother's home at that time.

The Mother has a long history of trauma, substance abuse, CPS[2] interventions and domestic violence at the hands of both Father C and Father A. Father A is a 55-year-old restaurant cook who has been consistently employed but intermittently homeless. He has a significant history of domestic violence assaults against the Mother with the children present. Father C is chronically unemployed, homeless and receives Supplemental Security Income (SSI) due to unclear mental health issues.

Dependency dispositional orders were entered, requiring all three parents to demonstrate the ability to meet the children's physical and psychological needs and

---

[1] The trial court finding mistakenly lists K.A.'s last name, but she is otherwise adequately identified in the record.

[2] Child Protective Services.

3

No. 38020-3-III (Consolidated with Nos. 38095-5-III,
38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III,
38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*

maintain a clean, safe, nurturing, stable, and drug/alcohol-free home.  Services were specifically ordered for each parent as follows:

The Mother was ordered to complete a chemical dependency evaluation and treatment, participate in random drug testing with negative results, complete a psychological evaluation and treatment, complete a parenting assessment and treatment, and complete mental health treatment with a domestic violence component.

Father A was ordered to participate in random UA/BA[3] testing, complete anger management and/or domestic violence assessment, and parenting assessment.

Father C was ordered to complete a chemical dependency evaluation, participate in random UA/BA testing, complete a neuropsychological evaluation, complete mental health treatment, and complete a domestic violence assessment.

All three parents moved in and out of compliance with both ordered and recommended services throughout the dependency.  The Department did not provide referrals to any of the parents in writing.

During a drug relapse period where she was suspended from her drug treatment program, the Mother requested family therapy but the children's therapist declined to provide the service.  The Department tried to set up family therapy on more than one

---

[3] Urinalysis/blood alcohol.

4

occasion, but there was no specific referral from the Department because of the opinions of the child therapist. The Department did not arrange any other family therapy services because "we want her to stay engaged with—well, get involved with the chemical dependency, which is not happening right now." Report of Proceedings (RP) at 683. The Department did not refer parenting classes even though the social worker felt they would be beneficial.

Father A failed to engage entirely with the Department until the final months of the termination proceedings. Early on, the Department referred him to a family therapist for his parenting assessment but he failed to schedule with them. As the termination trial approached, Father A's attorney requested the Department provide another referral for a parenting assessment. The Department did not provide a second referral for parenting assessment or parenting classes.

Father C completed referred assessments for chemical dependency treatment and domestic violence. However, by November 2018, the Department had capacity concerns for Father C and noted the need for a neuropsychological evaluation referral. Father C completed a neuropsychological evaluation which diagnosed average cognition, chronic depressive disorder and other specified trauma, and recommended individual therapy and parent education. However, the evaluator felt that portions of his report lacked validity due to Father C's fatigue during the evaluation. He recommended further psychological

No. 38020-3-III (Consolidated with Nos. 38095-5-III,
38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III,
38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*

testing which did not occur. Despite remaining concerns about mental health barriers, the Department ceased referrals after an inability to contact Father C.

The Department petitioned to terminate both maternal and paternal relationships of all four children in late 2019. As of the date of trial, the children had remained out of the home for approximately 38 months. The trial court determined all four children's "near future" to be "at most" 6 months. Clerk's Papers at 236. The trial court found that none of the parents demonstrated a likelihood that they would remedy their parental deficiencies within that time. The court found that "[the Mother] has absolutely no ability to have her four children returned home and no matter what services she is provided." RP at 1190. The court found the parents unfit due to their long histories of collective mental health, substance abuse, instability, criminal history and minimal progress in services. Finding futility, the trial court terminated the rights of all three parents.

All three parents appeal the termination of rights.

ANALYSIS

The Mother appeals the Department's failure to provide her with family therapy and parenting classes recommended by her assessment, asserting that they should have been offered simultaneously with her counseling and substance abuse treatment to prevent her relationship detachment from the children. Father A appeals the

6

No. 38020-3-III (Consolidated with Nos. 38095-5-III,
38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III,
38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*

Department's failure to provide him a requested secondary referral for a parenting

assessment. Father C appeals the Department's failure to diagnose known cognitive

limitations and to tailor necessary service referrals to his mental health needs.

All three challenges arise from the statutory requirement that before parental rights

are terminated, the Department must prove that all court-ordered and necessary services

were expressly and understandably offered to each parent. RCW 13.34.180(1)(d). The

Department must identify a parent's specific needs and tailor the services it offers to meet

each parent's specific needs. *In re Matter of D.H.*, 195 Wn.2d 710, 727, 464 P.3d 215

(2020). To protect a parent's fundamental liberty interest in the care and custody of their

children, the Department has the burden of proving this requirement by "clear, cogent

and convincing evidence." *In re Termination of MASC*, 197 Wn.2d 685, 698, 486 P.3d

886 (2021). "Whether a termination order satisfies statutory requirements is a question of

law" reviewed de novo. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522

(2011).

The Supreme Court has provided the following guidelines for tailoring services to

parental intellectual disabilities in the context of termination proceedings:

> [W]here [the Department] has reason to believe that a parent may have an
> intellectual disability, it must make reasonable efforts to ascertain whether
> the parent does in fact have a disability and, if so, how the disability could
> interfere with the parent's capacity to understand [the Department's] offer
> of services. [The Department] must then tailor its offer of services in

7

accordance with current professional guidelines to ensure that the offer is reasonably understandable to the parent.

To determine whether [the Department] has fulfilled its duty, the trial court must place itself in the position of an objective observer who is aware of the nature and extent of the parent's intellectual disability, as well as current professional guidelines for communicating with people who have similar disabilities. The court must then determine whether [the Department] made reasonable efforts to determine the parent's needs and whether [the Department's] offer of services was reasonably understandable to the parent based on the totality of the circumstances.

*In re M.A.S.C.*, 197 Wn.2d at 689. Even where a parent does not have disabilities, the Department fails to provide a necessary service when sequential referrals or the "delay in one service creates a [new] separate deficiency or results in an unaddressed [existing] deficiency in the course of termination proceedings." *In re Parental Rights of D.H.*, 195 Wn.2d at 725. Additionally, the Department may not ignore a request for services at any point before trial. *In re Dependency of D.A.*, 124 Wn. App. 644, 654, 102 P.3d 847 (2004).

Here, the parties all agree that the necessary tailored services in this matter were not provided as statutorily required. The Department failed to provide requested referrals for family therapy and failed to follow up in ascertaining Father C's mental health diagnosis. This court accepts the State's concession that it did not carry its burden of proof. We reverse the termination of parental rights as to all three parents. Where we reverse the termination on the statutory basis, it is unnecessary to reach the parents'

No. 38020-3-III (Consolidated with Nos. 38095-5-III, 38021-1-III, 38096-3-III, 38023-8-III, 38093-9-III, 38024-6-III, and 38094-7-III)
*In re Parental Rights to K.A., E.A., A.C., I.C.*

sufficiency of the evidence challenges to particular trial court findings, challenges to the admission of expert testimony, immigration status and consideration of parental courtroom demeanor.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

9